ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 29, 2023

No. 23-3069

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN MARON NASSIF,

*Defendant–Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA
CASE NO. 1:21-CR-00421-JDB-1

_____

BRIEF FOR APPELLANT

_____

A. FITZGERALD HALL, ESQ.
Federal Defender, MDFL

MELISSA FUSSELL, ESQ.                JAMES T. SKUTHAN, ESQ.
Assistant Federal Defender          First Assistant Federal Defender
Florida Bar No. 0125967             Florida Bar No. 0544124

Federal Defender's Office
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: 407-648-6338
E-Mail:  Melissa_fussell@fd.org

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), defendant-appellant John Maron Nassif, hereby states as follows:

### A. Parties and Amici:

This appeal arises from a criminal prosecution of defendant-appellant John Maron Nassif by plaintiff-appellee, the United States of America.  There are no intervenors or amici.

### B. Rulings Under Review:

This is an appeal from the judgment of the district court (the Honorable John D. Bates) on April 27, 2023.  In this appeal, Mr. Nassif seeks review of his conviction on Count Four and his sentence.

### C. Related Cases:

This case has not previously been before this Court.  Appellant is aware of no related cases.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument has been scheduled for September 29, 2023, at 9:30 a.m.

## TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases.................................................i

    A. Parties and Amici.....................................................................................i

    B. Rulings Under Review ...........................................................................i

    C. Related Cases ........................................................................................i

Statement Regarding Oral Argument .........................................................................i

Table of Authorities .....................................................................................................iv

Jurisdiction Statement .................................................................................................1

Statutes and Sentencing Guidelines ...........................................................................1

Issues Presented ...........................................................................................................1

Statement of the Case .................................................................................................2

    I.    Course of Proceedings and Disposition in the Court Below .......................2

    II.    Statement of the Facts.................................................................................4

Summary of Argument ................................................................................................5

Argument ......................................................................................................................6

    I.    Section 5104(e)(2)(G) is facially unconstitutional......................................6

        A. Section 5104(e)(2)(G) is unconstitutionally overbroad..........................7

            1. Section 5104(e)(2)(G) prohibits a substantial amount of protected expression relative to its plainly legitimate sweep ..........8

            2. The statute criminalizes a substantial amount of protected First Amendment activity, and there is a realistic danger that § 5104(e)(2)(G) will compromise recognized First Amendment protections of parties not before the Court.......................................9

3.  The district court's construction of the statute shows that § 5104(e)(2)(G) is overbroad ............................................................. 13

4.  The traditionally publicly accessible portions of the Capitol Grounds are a public forum, and the government failed to meet its burden of showing otherwise ............................................................ 15

5.  Even if the Capitol Buildings constitute a nonpublic forum, the government failed to meet its burden of showing that § 5104(e)(2)(G)'s prohibition on organized conduct expressing a viewpoint is reasonable in light of the purpose served by the forum ...................................................................................... 17

B.  Section 5104(e)(2)(G) is unconstitutionally vague ................................ 19

II.   The district court erroneously applied U.S.S.G. § 2A2.4 to Mr. Nassif's § 1752(a)(2) conviction .................................................... 23

III.  The district court erroneously and unconstitutionally penalized Mr. Nassif for exercising his Sixth Amendment right to trial ......................... 28

Conclusion ............................................................................................ 32

Certificate of Compliance with Type-Volume Limit ................................... 33

Certificate of Service .............................................................................. 33

Addendum ............................................................................................... i

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*,

    482 U.S. 569 (1987)........................................................................14

*Berg v. United States*, 631 A.2d 394 (D.C. 1993).........................................15

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978).......................................29, 31

*Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50 (D.D.C. 2000) . 11, 12, 13, 19, 20

*City of Houston v. Hill*, 482 U.S. 451 (1987)..............................................15

*Connally v. Gen. Const. Co.*, 269 U.S. 385 (1926)......................................19

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) ..............................................11

*Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123 (1992) ...............9

*Grogan v. United States*, 2020 WL 10897988.............................................16

*Hess v. United States*, 496 F.2d 936 (8th Cir.1974).....................................30

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992).....17

*Jeannette Rankin Brigade v. Chief of Capitol Police*,

    342 F. Supp. 575 (D.D.C. 1972), *aff'd*, 409 U.S. 972, 93 S. Ct. 311,

    34 L. Ed. 2d 236 (1972)...............................................................18

*Lederman v. United States*, 131 F. Supp. 2d 46 (D.D.C. 2001).................10

*Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000)...................10

*Minnesota Voters All. v. Mansky*, 201 L. Ed. 2d 201, 138 S. Ct. 1876 (2018)............17

*Multimedia Pub. Co. of S.C. v. Greenville-Spartanburg Airport Dist.*,

    991 F.2d 154 (4th Cir. 1993)........................................................18

| Cases | Page(s) |
|---|---|

*Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963) ....... 11

*Price v. Garland*, 45 F.4th 1059 (D.C. Cir. 2022),

    *cert. denied*, 2023 WL 3158363 (U.S. May 1, 2023)................................................ 18

*Reno v. ACLU*, 521 U.S. 844 (1997) .................................................................... 13, 20

*Thornhill v. State of Alabama*, 310 U.S. 88 (1940) .................................................. 20

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ......................... 19

*U. S. Postal Serv. v. Council of Greenburgh Civic Associations*,

    453 U.S. 114 (1981)................................................................................................. 17

*United States v. Araujo*, 539 F.2d 287 (2nd Cir.1976) ............................................. 30

*United States v. Brodnax*, Case No.: 1:21-cr-350...................................................... 27

*United States v. Brown*, 892 F.3d 385 (D.C. Cir. 2018)............................................. 22

*United States v. Crocker*, 788 F.2d 802 (1st Cir.1986) ............................................. 30

*United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023)......................................... 6, 28

*United States v. Flores*, 912 F.3d 613 (D.C. Cir. 2019)............................................. 23

*United States v. Frost*, 914 F.2d 756 (6th Cir.1990)................................................. 29

*United States v. Gray*, 2023 WL 2998862 (D.D.C. Jan. 26, 2023) ........................... 21

*United States v. Hansen*, No. 22-179, 2023 WL 4138994 (U.S. June 23, 2023) ......... 8

*United States v. Hutchings*, 757 F.2d 11 (2d Cir. 1985)............................................ 30

*United States v. Jennings*, 991 F.2d 725 (11th Cir. 1993) ........................................ 24

*United States v. Jones*, 997 F.2d 1475 (D.C. Cir. 1993) ....................................... 29, 31

*United States v. Marquez*, Case No: 1:21-cr-136 ..................................................... 27

**Cases**                                                                                          **Page(s)**

*United States v. Monroe*, 943 F.2d 1007 (9th Cir. 1991) ............................................. 29

*United States v. Montgomery*, No. CR 21-46 (RDM),

    2021 WL 6134591 (D.D.C. Dec. 28, 2021) ..................................................... 13

*United States v. Munchel*, 2023 WL 2992689 (D.D.C. Apr. 18, 2023) ...................... 21

*United States v. Partee*, 31 F.3d 529 (7th Cir. 1994) .................................................. 24

*United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000) ............................ 16, 17

*United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) ........................................... 6, 28

*United States v. Rhine*, 2023 WL 372044 (D.D.C. Jan. 24, 2023) .............................. 21

*United States v. Rodriguez,* 959 F.2d 193 (11th Cir. 1992) ....................................... 31

*United States v. Roe*, 670 F.2d 956 (11th Cir.1982) ................................................... 30

*United States v. Sheppard*, 2022 WL 17978837 (D.D.C. Dec. 28, 2022).................... 21

*United States v. Stenz, 1:21-cr-00456-BAH (February 17, 2022 Transcript)* ........... 22

*United States v. Stevens*, 559 U.S. 460 (2010) ............................................................ 11

*United States v. Street*, 66 F.3d 969 (8th Cir. 1995)............................................. 16, 24

*United States v. Verussio*, 762 F.3d 1 (D.C. Cir. 2014)........................................... 6, 28

*United States v. Williams*, 553 U.S. 285 (2008)......................................................... 13

*United States v. Wright*, 533 F.2d 214 (5th Cir.1976) ............................................... 30

*Virginia v. Hicks*, 539 U.S. 113, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).................. 8

vi

**Statutes**                                                                                          **Page(s)**

18 U.S.C. § 1752 ................................................................................................ 24, 26

18 U.S.C. § 1752(a)(1) ........................................................................................ 2, 28

18 U.S.C. § 1752(a)(2) ................................... 2, 3, 6, 22, 23, 24, 26, 27, 28

18 U.S.C. § 2237(a)(2)(A) ........................................................................................ 27

18 U.S.C. § 3231 ........................................................................................................ 1

18 U.S.C. § 3742 ........................................................................................................ 1

28 U.S.C. § 1291 ........................................................................................................ 1

40 U.S.C. § 5104(e)(2)(D) ........................................................................................ 2

40 U.S.C. § 5104(e)(2)(G) ...... 1, 2, 5, 6, 7, 8, 9, 10, 11, 13, 14, 17, 18, 19, 20, 21, 22, 32

U.S.S.G. § 1B1.2 cmt. n.1 ...................................................................................... 23

U.S.S.G. § 1B1.2(a) ................................................................................................ 23

U.S.S.G. § 2A2.4 ............................................................................... 2, 3, 6, 22, 24

U.S.S.G. § 2B2.3 ............................................................................................. 6, 24, 28

USSG § 1B1.1(a)(1) ................................................................................................ 23

USSG § 1B1.2 .......................................................................................................... 23

USSG § 1B1.2(a) ...................................................................................................... 23

USSG § 2A2.4 ................................................................................. 23, 24, 27, 28

USSG § 2B2.3 ............................................................................. 23, 24, 25, 27, 28

USSG § 2X5.2 .......................................................................................................... 24

USSG § 2X5.2 cmt. n.1 .......................................................................................... 24

USSG § 3E1.1 .......................................................................................................... 30

**Other Authorities**                                                      **Page(s)**

U.S. Const. amend I.................................................... 2, 5, 6, 7, 8, 9, 11, 13, 15, 17, 20

U.S. Const. amend VI ................................................................................. 2, 6

Capitol Police Regulation §12.1.10.................................................... 9

Congressional Record-House (October 19, 1967).................................... 7

D.C. Circuit Rule 28(a)(1)...............................................................i

F. R. App. P. 28(f)................................................................... 1

Traffic Regulations for the Capitol Grounds § 158 .............................. 12

Traffic Regulations for the United States Capitol GTraffic Regulations .......... 10

United States Capitol Police Guidelines for Conducting an Event on United

   States Capitol Grounds,

   https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded

   /Guidelines%20and%20Application%20for%20Conducting%20an%20Event

   %20on%20U.S.% 20Capitol%20Grounds.pdf (last accessed July 13, 2023)........... 10

## UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-3069**

### UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

**v.**

### JOHN MARON NASSIF

*Defendant-Appellant*

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

———————————————————————

### BRIEF FOR APPELLANT

———————————————————————

### JURISDICTIONAL STATEMENT

This is a direct appeal from a final judgment in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231. A timely notice of appeal having been filed, this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

### STATUTES AND SENTENCING GUIDELINES

Pursuant to Federal Rule of Appellate Procedure 28(f), relevant authorities are set forth in appellant's Addendum.

### ISSUES PRESENTED

1. Whether 40 U.S.C. § 5104(e)(2)(G) is unconstitutionally overbroad.

2. Whether § 5104(e)(2)(G) is unconstitutionally vague.

3. Whether the district court erred in applying U.S.S.G. § 2A2.4, a guideline dealing with obstructing or impeding officers, to Mr. Nassif's conviction for disorderly and disruptive conduct in a restricted area under 18 U.S.C. § 1752(a)(2).

4. Whether the district court unconstitutionally penalized Mr. Nassif for exercising his Sixth Amendment right to trial.

## STATEMENT OF THE CASE

### I.    Course of Proceedings and Disposition in the Court Below

Mr. Nassif was charged by information with four misdemeanor counts based on his actions on January 6, 2021, at the United States Capitol: entering or remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1) (Count One); disorderly or disruptive conduct in a restricted building, in violation of § 1752(a)(2) (Count Two); disorderly or disruptive conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and parading, demonstrating, or picketing in a Capitol Building, in violation of § 5104(e)(2)(G) (Count Four). He moved to dismiss Count Four, arguing that it failed to state an offense, violates the First Amendment, is substantially overbroad, and is unconstitutionally vague. The district court denied the motion. A:59-60.

The case proceeded to a bench trial. After the government rested, defense counsel moved for a judgment of acquittal on all four counts and renewed the motion to dismiss Count Four. The district court denied Mr. Nassif's motion for judgment of acquittal. A:287. Mr. Nassif was convicted of all four counts.

At sentencing, over Mr. Nassif's objection, the district court applied U.S.S.G. § 2A2.4, dealing with obstructing or impeding officers, to Count Two, which charged a violation of 18 U.S.C. § 1752(a)(2), prohibiting disorderly and disruptive conduct in a restricted area. Section 2A2.4 carried an offense level of 10 and a guidelines range of 6-12 months.

Also at sentencing, Mr. Nassif argued that the district court should consider trial cases where the defendants engaged in worse conduct than Mr. Nassif and received no jail time. Rejecting that argument, the district court asked counsel for Mr. Nassif, "Why should I look at cases that involve pleas where the individual is in a different circumstance than if you go to trial and don't get acceptance of responsibility, and even if you testify and the Court finds you testified falsely and applies and obstruction of justice enhancement?" A:381-82. Counsel for Mr. Nassif contended that a court "cannot penalize somebody for going to trial." *Id.* at 383. The district court stated "Well, they are penalized for going to trial in terms of acceptance of responsibility." *Id.* Defense counsel responded that acceptance of responsibility was already factored into the guidelines, as was obstruction of justice, and to consider the fact that the defendant went to trial beyond those factors "imposes too large a penalty on somebody just for taking the case to trial." *Id.* The district court later emphasized that it considered the fact that Mr. Nassif went to trial—in addition to acceptance of responsibility and obstruction of justice—in imposing his sentence. *Id.* at 394.

The district court calculated Mr. Nassif's total offense level at 12, with a guidelines range of 10-16 months, capped at 12 months because of the statutory maximum. *Id.*

at 376. The district court sentenced Mr. Nassif to 7 months in prison on Counts One and Two, to be served concurrently with 6 months in prison on Counts Three and Four, with 12 months' supervised release to follow on Counts One and Two. *Id.* at 394.

## II.    Statement of Facts

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol to certify the 2020 Presidential Election. The joint session began at around 1:00 p.m. By approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber. As the proceedings continued, a crowd gathered outside the U.S. Capitol. At around 2:00 p.m., some individuals made their way past barricades and U.S. Capitol Police officers. They continued on to the exterior façade of the building, and shortly after 2:00 p.m., they entered the Capitol Building. At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, evacuated the chambers, effectively suspending the proceedings.

Around 3:01 p.m., Mr. Nassif entered the restricted area outside the East Front of the United States Capitol. PSR, Doc. 78 at 6. While on the steps, Mr. Nassif yelled "Whose house?" A:220. He walked to the top of the stairs in front of the Rotunda door, where, at 3:09 p.m., he stood at the front of a crowd that was trying to get inside the door into the United States Capitol building. Doc. 78 at 6.  The district court found

that, prior to entering the Capitol Building, Mr. Nassif yelled to other individuals to "Keep fighting!" A:392. The district court based that finding on video evidence, rejecting Mr. Nassif's contention that the words "keep fighting!" did not sync with his lip movements in the video. *See id.* at 234, 274. At 3:14 p.m., Mr. Nassif entered the building, surrounded by a densely packed crowd of people. Doc. 78 at 6. The district court concluded that, "once inside the Capitol, he beckoned to other demonstrators who were trying to push into the building." A:297. At 3:18 p.m., Mr. Nassif entered the Rotunda. Doc. 78 at 6. Mr. Nassif never went farther than the foyer and entrance area of the Capitol Building. He exited the building via the East Rotunda doors at about 3:23 p.m. *Id.* The district court found that there was "no evidence he engaged in violence himself, to his credit, or that he encouraged others to be violent." A:392.

## SUMMARY OF ARGUMENT

Mr. Nassif's conviction on Count Four should be vacated because § 5104(e)(2)(G) is unconstitutional on its face. First, § 5104(e)(2)(G) is overbroad because it prohibits a substantial amount of constitutionally protected speech relative to any plainly legitimate sweep. To the extent that the First Amendment forum analysis applies, portions of the Capitol Buildings are a public forum, and crucially, the government failed to meet its burden of showing that the Capitol Buildings are a nonpublic forum and that a ban on organized conduct expressing a viewpoint is reasonable in light of the purpose served by the forum. Second, § 5104(e)(2)(G) is unconstitutionally vague because it fails to give people of ordinary intelligence a reasonable opportunity to know what is prohibited, it fails to provide explicit

standards to those who enforce it, and it inhibits the free exercise of First Amendment freedoms by chilling such exercise through its uncertain meaning.

Additionally, Mr. Nassif's sentence should be vacated and his case should be remanded for resentencing for two reasons. First, the district court incorrectly applied U.S.S.G. § 2A2.4 (dealing with the obstruction of officers) to Mr. Nassif's § 1752(a)(2) conviction for disorderly or disruptive conduct in a restricted building or grounds, rather than § 2B2.3 (dealing with trespass). Second, the district court unconstitutionally penalized Mr. Nassif for exercising his Sixth Amendment right to trial.

## ARGUMENT

### I.  **Section 5104(e)(2)(G) is facially unconstitutional.**

This Court reviews purely legal questions *de novo*. *United States v. Fischer*, 64 F.4th 329, 335 (D.C. Cir. 2023); *United States v. Verussio*, 762 F.3d 1, 13 (D.C. Cir. 2014). Thus, constitutional challenges are reviewed *de novo*. *United States v. Popa*, 187 F.3d 672, 674 (D.C. Cir. 1999).

Section 5104(e)(2)(G), which states, "An individual or group of individuals may not willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings," is overbroad in violation of the First Amendment. Even if the statute were not overbroad, it is unconstitutionally vague in violation of the First Amendment and the Due Process Clause.[1] The district court's interpretation of the statute—that it

---

[1] Courts have traditionally treated "vagueness and overbreadth as logically related and similar doctrines." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983).

reaches all "organized conduct advocating a viewpoint" in the Capitol Building—highlights its extraordinary breadth and vagueness.

A ban on all organized conduct expressing a viewpoint within the publicly accessible portions of the Capitol Buildings is impermissible under the First Amendment to the United States Constitution. A statute whose plain language criminalizes all such expression might be expected in an authoritarian regime. It cannot stand in the United States of America.

### A. Section 5104(e)(2)(G) is unconstitutionally overbroad.

Section 5104(e)(2)(G), which criminalizes parading, picketing, or demonstrating in a Capitol Building, is unconstitutionally overbroad on its face. Merriam-Webster defines "demonstration" as, among other things, "an outward expression or display" or "a public display of group feelings toward a person or cause." The plain language covers a great deal of protected expression: lawmakers wearing red ribbons for AIDS awareness week, visitors bowing their heads in unison to recognize victims of a tragedy, or members of the Freedom Democratic Party of Mississippi sitting peacefully outside the Committee Room.[2] Section 5104(e)(2)(G)'s reach is not limited to those with no right to be in the Capitol Buildings, nor is it

---

[2] Indeed, the peaceful sit-in by the Freedom Democratic Party of Mississippi—a group supported by Dr. Martin Luther King, Jr, and formed during Freedom Summer—was cited as a reason legislation was needed to "protect the Capitol." Congressional Record-House (October 19, 1967) at 29388, *available at* https://www.govinfo.gov/content/pkg/GPO-CRECB-1967-pt22/pdf/GPO-CRECB-1967-pt22-2-1.pdf (last accessed July 17, 2023).

limited to those who are behaving disruptively. It applies in all parts of the Capitol Buildings, even those portions which are publicly accessible, such as the Rotunda.

In the First Amendment context, "the overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *United States v. Hansen*, No. 22-179, 2023 WL 4138994, at *5 (U.S. June 23, 2023). "If the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep,' then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid" on overbreadth grounds. *Id.* "The Supreme Court has "justified this doctrine on the ground that it provides breathing room for free expression." *Id.* "Overbroad laws 'may deter or "chill"' constitutionally protected speech,' and if would-be speakers remain silent, society will lose their contributions to the 'marketplace of ideas.'" *Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 119, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003)). "To guard against those harms, the overbreadth doctrine allows a litigant (even an undeserving one) to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak." *Hansen*, 2023 WL 4138994, at *5.

**1. Section 5104(e)(2)(G) prohibits a substantial amount of protected expression relative to its plainly legitimate sweep.**

In the First Amendment context, Mr. Nassif need only establish that the statute prohibits a substantial amount of protected expression relative to its plainly legitimate sweep. Section 5104(e)(2)(G) is unique because it is targeted at expressive

conduct and contains no narrowing language beyond being limited to the (broad) location of the Capitol Buildings' interiors. Here, only rewriting § 5104(e)(2)(G) could give it any significant plainly legitimate sweep.

The government claims that "trespass" is illustrative of the constitutional applications of § 5104(e)(2)(G). Gov't Resp. to Mot. to Expedite at 9. But § 5104(e)(2)(G) does not prohibit trespassing. Section 5104(e)(2)(G) does not criminalize disruptive conduct, either, contrary to the government's argument below. *See* A:39. It does not have a significant plainly legitimate sweep simply because some demonstrating is also disruptive or because some parading is also trespassing. The incidental capture of conduct that is not prohibited by § 5104(e)(2)(G)'s terms is not part of its sweep.

> **2. The statute criminalizes a substantial amount of protected First Amendment activity, and there is a realistic danger that § 5104(e)(2)(G) will compromise recognized First Amendment protections of parties not before the Court.**

Section 5104(e)(2)(G) criminalizes a substantial amount of protected First Amendment activity, and there is a realistic danger that it will compromise the First Amendment protections of parties not before the Court.

The current Capitol Police policy exposes the true extent of that danger.[3] *Cf. Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) ("In evaluating

---

[3] Capitol Police Regulation §12.1.10 defines "demonstration activity" to include "any protest, rally, march, vigil, gathering, assembly, projecting of images or similar conduct engaged in for the purpose of expressing political, social, religious or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution." Traffic Regulations for the United States Capitol Grounds, *available at* https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/

respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."). Like the plain text of § 5104(e)(2)(G), the policy contains no limitation to trespassers or disruptive conduct. There is a realistic danger of Capitol Police enforcing the law in a way that matches their written policy. *Cf. Lederman v. United States*, 131 F. Supp. 2d 46, 54 (D.D.C. 2001) ("It is hard to conceive of much expression that a reasonable officer would *not* find to be conveying a message regarding some point of view.") (emphasis in original). *Lederman*'s assessment that, if that ban were applied "literally and evenhandedly," congressional staffers arguing about policy would risk arrest, is equally applicable here, provided the argument took place in the Capitol Rotunda or some other interior part of the Capitol Buildings. 89 F. Supp. 2d 29, 41 (D.D.C. 2000), *on reconsideration in part*, 131 F. Supp. 2d 46 (D.D.C. 2001).

Hopefully, congressional staffers debating in the Capitol Buildings will not be arrested for demonstrating. But "[t]he danger, of course, is that such a broadly-worded ban . . . would be selectively employed to silence those who expressed unpopular ideas regardless of whether the speaker created an obstruction or some other disturbance." *Lederman*, 89 F. Supp. 2d 29, 42. Importantly, "the First Amendment protects against the Government; it does not leave us at the mercy of

---

wysiwyg_uploaded/US%20Capitol%20Grounds%20Traffic%20Regulations_Amended%20February%202019.pdf ; *see also* United States Capitol Police Guidelines for Conducting an Event on United States Capitol Grounds, *available at* https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/Guidelines%20and%20Application%20for%20Conducting%20an%20Event%20on%20U.S.%20Capitol%20Grounds.pdf (last accessed July 13, 2023).

*noblesse oblige*. [The Supreme Court] would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010). "It makes no difference whether such prosecutions or proceedings would actually be commenced. It is enough that a vague and broad statute lends itself to selective enforcement against unpopular causes." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 435 (1963). "So long as the statute remains available to the [government] the threat of prosecutions of protected expression is a real and substantial one. Even the prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression." *Dombrowski v. Pfister*, 380 U.S. 479, 494 (1965). The current Capitol Police policy shows that the danger to the First Amendment rights of others not before the Court is a realistic one.

The Capitol Police's past enforcement policy also shows the danger § 5104(e)(2)(G) poses to First Amendment rights. One Capitol Police regulation interpreting a previous codification of the instant statute was held unconstitutional in a case in which a pastor was prohibited from *quietly praying* with a tour group— under imminent threat of arrest—in a Capitol Building. *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000). The Capitol Police regulation then-in-effect explained that demonstration activity included:

> parading, picketing, speechmaking, holding vigils, sit-ins, or other expressive conduct that convey[s] a message supporting or opposing a point of view or has the intent, effect or propensity to attract a crowd of onlookers, but does not include merely wearing Tee shirts, buttons or other similar articles of apparel that convey a message.

11

*Id.* (quoting Traffic Regulations for the Capitol Grounds § 158). The pastor challenged that regulation, arguing it was unconstitutional, and he succeeded on his motion for summary judgment.

The *Bynum* court reasoned that, while the regulation was justified to an extent to serve the statutory purpose of preventing disruptive conduct in the Capitol Building, "it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as 'speechmaking . . . or other expressive conduct . . . .'" *Id.* at 57 (quoting Traffic Regulations for the Capitol Grounds § 158). The court held that the regulation violated due process, stating that:

> It does not provide either permissible or sufficient guidance under the statute it purports to implement to survive a constitutional challenge. In fact, the definition of "demonstration" in the regulation—encompassing all expressive conduct, whether disruptive or not—appears to expand the restrictive powers given by statute to the Capitol Police rather than limit or guide them. This definitional "guidepost" thus has the potential to squelch nearly any type of expressive conduct, whether or not it is actually a demonstration, and may sweep within its scope expression that is protected by the First Amendment. The regulation therefore is both unconstitutionally overbroad and unconstitutionally vague.

*Id.* at 58. The court focused on the regulation rather than the statute itself, operating under the premise that the statute was limited to disruptive conduct. *Id.* at 57-58.

The district court's decision in Mr. Nassif's case shattered the *Bynum* court's dubious, if well-intentioned, premise. Strangely, although the district court relied on *Bynum* for its conclusion that Capitol Buildings constituted a nonpublic forum, *see infra*, the district court did not agree with the *Bynum* court's finding that the statute was limited to disruptive conduct. In an ironic twist, the district court ultimately

construed § 5104(e)(2)(G) to be even broader than the regulation *Bynum* invalidated as overbroad.[4] If Mr. Bynum prayed quietly with his tour group today, his First Amendment expression would be in greater danger than it was twenty-three years ago. Evidently, the extraordinary breadth of the language is a feature, not a bug that can be finessed away with the right policy, regulation, or court opinion. This Court must not rewrite the law to make it constitutional. *Reno v. ACLU*, 521 U.S. 844, 884 (1997).

### 3. The district court's construction of the statute shows that § 5104(e)(2)(G) is overbroad.

Although the district court concluded § 5104(e)(2)(G) was not overbroad, its reasoning was erroneous and its far-reaching construction only highlights the statute's overbreadth. In conducting an overbreadth analysis, a court must first construe the statute. *United States v. Williams*, 553 U.S. 285, 293 (2008). The next step is to ask whether the statute, properly construed, "criminalizes a substantial amount of protected expressive activity." *Id.* at 297; *United States v. Montgomery*, No. CR 21-46 (RDM), 2021 WL 6134591, at *23 (D.D.C. Dec. 28, 2021).

As for the first step of the analysis, the district court interpreted the statute to reach "organized conduct advocating a viewpoint." A:72 n.9. The district court did not complete the second step of the overbreadth analysis, instead reasoning that, under the First Amendment forum analysis, it did not need to determine whether the

---

[4] The regulation held to be unconstitutional in *Bynum* was at least limited to expressive conduct with a propensity to attract onlookers, and it expressly excluded expressive t-shirts and buttons. The district court's construction had no such limitations, and neither does the plain language of § 5104(e)(2)(G).

statute was limited to disruptive conduct because the Capitol Buildings constitute a nonpublic forum. *Id.* at 67. However, nonpublic-forum status is not itself determinative under the overbreadth doctrine. *Cf. Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 573–74 (1987) ("Because we conclude that the resolution is facially unconstitutional under the First Amendment overbreadth doctrine regardless of the proper standard, we need not decide whether LAX is indeed a public forum, or whether the *Perry* standard is applicable when access to a nonpublic forum is not restricted."). Indeed, "[m]uch nondisruptive speech—such as the wearing of a T-shirt or button that contains a political message . . . is still protected speech even in a nonpublic forum." *Jews for Jesus, Inc.*, 482 U.S. at 576. Thus, a court cannot properly analyze a statute's criminalization of protected speech solely by reference to the forum analysis.

The district court's construction is strikingly broad. A ban on "organized conduct advocating a viewpoint" would include virtually all activity that occurs in the Capitol Building while Congress is in session, except for administrative, janitorial, or security-related tasks. Indeed, Congress *requires* organized conduct advocating for various viewpoints to function, and importantly, § 5104(e)(2)(G)'s reach is not limited to those who have no right to be in the Capitol Buildings or those who are being disruptive. It prohibits everyone from parading, picketing, or demonstrating in the publicly accessible Rotunda just as it prohibits that expression in the offices of Congress members and staffers. Thus, even as construed by the district court, § 5104(e)(2)(G) "criminalizes a substantial amount of protected expressive activity."

14

And it is no cure to speculate that the statute will not be enforced against members of Congress or against people who are not being disruptive. The overbreadth doctrine applies to "sweeping, dragnet laws" regardless of actual enforcement, because the Supreme Court recognized the danger in permitting lawmakers to cast a huge net to catch all possible offenders and "leave it to the courts to step inside and say who could be rightfully detained" and who should be released. *City of Houston v. Hill*, 482 U.S. 451, 466 (1987).

4. **The traditionally publicly accessible portions of the Capitol Grounds are a public forum, and the government failed to meet its burden of showing otherwise.**

Below, neither party directly engaged in the First Amendment forum analysis. However, the district court's decision turned on the forum status of the Capitol Buildings. Contrary to the district court's determination, the traditionally publicly accessible portions of the Capitol Buildings, including the Capitol Rotunda, are properly categorized as a public forum. The District of Columbia Court of Appeals has said that "[i]t is well established in this jurisdiction that the United States Capitol Rotunda, which is at the very heart of the United States Capitol Building, is a 'unique situs for demonstration activity' and 'a place traditionally open to the public . . . to which access cannot be denied broadly or absolutely. . . .'" *Berg v. United States*, 631 A.2d 394, 397–98 (D.C. 1993). And as this Court has stated, "courts have long recognized that the Capitol Grounds as a whole meet the definition of a traditional public forum." *Lederman v. United States*, 291 F.3d 36, 41 (D.C. Cir. 2002). Notably, "[t]he United States Capitol Grounds extend from Union Station in the North to

15

Virginia Avenue in the South, and from Second Street Northeast to Third Streets North- and Southwest, *encompassing the Capitol itself as well as House and Senate office buildings*, a power plant, press areas, and public open space." *Id.* at 39 (emphasis added). Indeed, the United States itself recently described the "Capitol Rotunda" as a "unique situs for demonstration activity" and "an area to which the public has unrestricted access." *Grogan v. United States*, 2020 WL 10897988, Gov't Br. at 42 (filed Sept. 30, 2020 in the D.C. Court of Appeals).

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 804 (2000). Here, although the district court employed the forum analysis, it did not hold the government to its burden under that analysis. *Cf. Lederman*, 291 F.3d at 43 (noting that the government "failed to meet its 'burden . . . to show'" that the sidewalk around the Capitol Building was a nonpublic forum). While the government stated that the Capitol Buildings were a nonpublic forum, it cited no binding authority for that proposition, nor did it make any direct arguments as to why they should be considered a nonpublic forum. The government's conclusory statement that a Capitol Building is a nonpublic forum is insufficient to meet its burden under the forum analysis. When the district court found that the Capitol Buildings constituted a public forum anyway, it impermissibly put its thumb on the justice scale; in the First Amendment context, if there is a tie, "the tie goes to free expression." *Playboy Ent. Grp., Inc.*, 529 U.S. at 804.

16

**5. Even if the Capitol Buildings constitute a nonpublic forum, the government failed to meet its burden of showing that § 5104(e)(2)(G)'s prohibition on organized conduct expressing a viewpoint is reasonable in light of the purpose served by the forum.**

Even if the entirety of the Capitol Buildings constituted a nonpublic forum, the government still failed to meet its burden. "The First Amendment prohibits Congress from 'abridging freedom of speech, or of the press,' and its ramifications are not confined to the 'public forum.'" *U. S. Postal Serv. v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 131 n.7 (1981). And "[w]hen First Amendment compliance is the point to be proved, the risk of nonpersuasion—operative in all trials—must rest with the Government, not with the citizen." *Playboy Ent. Grp., Inc.*, 529 U.S. at 818. At a minimum, the Supreme Court "ha[s] required some explanation as to why certain speech is inconsistent with the intended use of the forum." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 691–92 (1992) (O'Connor, J., concurring). Thus, even if the government had met its burden of showing that the Capitol Buildings were a nonpublic forum, the law requires the government to show that the statute's prohibition on "organized conduct advocating a viewpoint," was "reasonable in light of the purpose served by the forum." *Minnesota Voters All. v. Mansky*, 201 L. Ed. 2d 201, 138 S. Ct. 1876, 1886 (2018). Here, the government did no such thing. To the contrary, it claimed that the statute was not aimed at speech, and that mere physical trespass would meet the elements. A:34. Indeed, in its response opposing Mr. Nassif's motion to expedite, the government doubled down on that interpretation of the statute. Gov't Resp. to Mot. to Expedite at 9.

17

Importantly, the government's argued interpretation conflicts with the district court's construction of the statute. Yet, while the district court rejected the government's construction of the statute, it nevertheless held that the reasonableness prong was met. A:64 n.4, 69. The purpose, according to the district court, was "ensuring that the activities of Congress proceed without disruption." *Id.* at 67. However, § 5104(e)(2)(D) already penalizes engaging in disruptive conduct in a Capitol Building. "The coexistence of [§ 5104(e)(2)(G)] with these prohibitions can, in reason, only imply that Congress must be taken, by the language it has used, to intend to prohibit absolutely assemblages which do not violate any of the more specific provisions. That purpose the Constitution does not countenance." *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 588 (D.D.C. 1972), *aff'd*, 409 U.S. 972, 93 S. Ct. 311, 34 L. Ed. 2d 236 (1972).

As discussed above, it is not enough that a prohibition on all organized conduct expressing a viewpoint would incidentally prevent some disruptions from occurring. As this Court and other circuits have held, "'reasonableness' requires something more than the toothless 'rational basis' test used to review the typical exercise of a state's police power." *Price v. Garland*, 45 F.4th 1059, 1072 (D.C. Cir. 2022), *cert. denied*, No. 22-665, 2023 WL 3158363 (U.S. May 1, 2023). "[I]t isn't enough simply to establish that the regulation is rationally related to a legitimate governmental objective." *Multimedia Pub. Co. of S.C. v. Greenville-Spartanburg Airport Dist.*, 991 F.2d 154, 159 (4th Cir. 1993). Furthermore, "in our system, undifferentiated fear or

apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969).

The district court's "reasonableness" analysis ignored the government's burden, and that is reason alone to vacate Mr. Nassif's conviction on Count Four. But beyond that, as this Court has explained, "'the primary purpose for which the Capitol was designed—legislating'—is entirely consistent 'with the existence of all parades, assemblages, or processions which may take place on the grounds.'" *Lederman*, 291 F.3d at 42. "[T]he fundamental function of a legislature in a democratic society assumes accessibility to public opinion." *Id.* (internal quotations omitted). Section 5104(e)(2)(G)'s broadly sweeping language is hopelessly at odds with that fundamental function.

**B. Section 5104(e)(2)(G) is unconstitutionally vague.**

Section 5104(e)(2)(G)'s language, which has been the subject of confusion throughout D.C. district courts, is unconstitutionally vague. A statute with terms "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). Thus, "[a] law is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, if it fails to provide explicit standards to those who enforce it, or if it operates to inhibit the free exercise of First Amendment freedoms by chilling such exercise by its uncertain meaning." *Bynum*, 93 F. Supp. 2d at 59. The threat of

criminal sanctions paired with vague language "poses greater First Amendment concerns than those implicated by [civil regulations]." *Reno*, 521 U.S. at 872.

The proceedings below contain several guesses as to what § 5104(e)(2)(G) means, which is unsurprising given the lack of statutory definitions for 'parading,' 'picketing,' or 'demonstrating.' *Cf. Thornhill v. State of Alabama*, 310 U.S. 88, 100–01 (1940) ("The vague contours of the term 'picket' are nowhere delineated."). The government contended that § 5104(e)(2)(G) is not vague because, "in short," parading, picketing, and demonstrating means "engag[ing] in disruptive conduct." A:39. The government even argued that trespassing in a Capitol Building after other people have trespassed and assaulted officers is itself demonstrating. *Id.* at 34. The government's argued standards are unsupported by the text of § 5104(e)(2)(G), and their conflict with the district court's interpretation, as discussed above, highlights the vague contours of the language.

The vague language that invited the conflicting interpretations of the district court and the government also invites arbitrary enforcement. Ultimately, "any regulation that allows a police officer the unfettered discretion to restrict behavior merely because it 'conveys a message' . . . cannot survive a due process challenge." *Bynum*, 93 F. Supp. 2d at 58. Although the *Bynum* court placed the blame on the regulation, holding that the statute itself was constitutional, the district court's construction of the statute in the instant case is even less specific than the language rejected as unconstitutional in *Bynum*. The inconsistency highlights how subjective the statutory language is. Few could have predicted that the *Bynum* opinion that

endeavored to limit the reach of § 5104(e)(2)(G) would later be used to lay a quick-sand foundation for a decision that *broadened* § 5104(e)(2)(G)'s reach, but that is what happened here. One can only guess as to what the reach of § 5104(e)(2)(G) will become the next time it is challenged.

It so happens that the district court's construction has already exposed more confusion as to the meaning of § 5104(e)(2)(G). *See, e.g.*, *United States v. Gray*, No. CR 21-0495 (ABJ), 2023 WL 2998862, at *14 n.6 (D.D.C. Jan. 26, 2023) (citing *Nassif* and concluding that "demonstrating" need not be organized and could be spontaneous conduct by one individual); *United States v. Rhine*, No. CR 21-0687 (RC), 2023 WL 372044, at *15 (D.D.C. Jan. 24, 2023) (citing *Nassif* and interpreting "demonstrate" to mean "organized activity that could disrupt Congress from carrying out its business, in the vein of parading or picketing"); *United States v. Munchel*, No. 1:21-CR-118-RCL, 2023 WL 2992689, at *7 (D.D.C. Apr. 18, 2023) (citing *Nassif* and interpreting § 5104(e)(2)(G) to mean "prohibit[ ] taking part in an organized demonstration or parade that advocates a particular viewpoint"); *United States v. Sheppard*, No. CR 21-203 (JDB), 2022 WL 17978837, at *6 (D.D.C. Dec. 28, 2022) (citing *Nassif* and interpreting § 5104(e)(2)(G) to mean "prohibit[ ] taking part in an organized demonstration or parade that advocates a particular viewpoint").

The courts are not alone in their confusion. The government's past representations suggest that it has been haphazardly guessing as to the meaning of § 5104(e)(2)(G). In *United States v. Stenz*, the district court expressed concern that the parading, picketing, or demonstrating charges were causing confusion among

members of the public, when so many alternative charges applied. The district court questioned the government on the matter, noting that the offense apparently applied to non-disruptive speech:

> But even in the elements that the government is proffering for the charge to parading, demonstrating, and picketing, the government is saying that it is not at all required in the elements that there be any disruption to Congress. It's just basically saying: You are parading, demonstrating, or picketing in the Capitol Building, and you did that knowingly. It's basically – they're not even in the elements that they're saying are sufficient for that charge saying that it required any disruption of Congress's proceedings.

Case 1:21-cr-00456-BAH, Doc. 40 at 22. Counsel for the government responded by saying, "that's true." *Id.* Yet below, faced with the prospect of § 5104(e)(2)(G) being invalidated on overbreadth grounds in the instant case, the government claimed that its reach was limited to disruptive conduct. One thing is for certain: a citizen looking for clear guidance as to what conduct is prohibited under § 5104(e)(2)(G) will come up empty-handed, whether they look to the courts or the United States Attorney's office. The constitution demands more, particularly in the First Amendment context. Section 5104(e)(2)(G) is unconstitutionally vague.

## II.    The district court erroneously applied U.S.S.G. § 2A2.4 to Mr. Nassif's § 1752(a)(2) conviction.

This Court "review[s] *de novo* the district court's interpretation of the Sentencing Guidelines in calculating a defendant's Sentencing Guidelines range." *United States v. Brown*, 892 F.3d 385, 401 (D.C. Cir. 2018).

"To arrive at a Guidelines sentence, a district court must first determine the offense guideline section from Chapter Two applicable to the offense of conviction,

and it must do so by referring to the Statutory Index." *United States v. Flores*, 912 F.3d 613, 621 (D.C. Cir. 2019) (citing USSG §§ 1B1.1(a)(1), 1B1.2(a)). Mr. Nassif was convicted under 18 U.S.C. § 1752(a)(2) for the offense conduct of entering a restricted building and engaging in disorderly and disruptive conduct therein that impeded government business and official functions. Rather than applying USSG § 2B2.3 (Trespass) to this count of conviction, the district court erroneously applied USSG § 2A2.4 (Obstructing or Impeding of Officers), notwithstanding that the indictment included no allegation that Mr. Nassif obstructed or impeded law enforcement officers. The erroneous application of § 2A2.4 resulted in a higher recommended Guidelines range than was applicable and requires remand for resentencing.

The Guidelines define the "offense of conviction" as *"the offense conduct charged in the count of the indictment or information of which the defendant was convicted."* U.S.S.G. § 1B1.2(a) (emphasis added).  Importantly, "[i]n the case of a particular statute that proscribes a variety of conduct that might constitute the subject of different offense guidelines, the Statutory Index may specify more than one offense guideline for that particular statute." *Id.* § 1B1.2 cmt. n.1. In such a case, "the court will determine which of the referenced guideline sections is most appropriate *for the offense conduct charged in the count of which the defendant was convicted.*" *Id.* (emphasis added).

Given the Guidelines' emphasis on the conduct charged in the indictment or information, courts have repeatedly concluded that § 1B1.2 limits the court to a review of the charging instrument to determine the applicable guideline, not a broad

23

review of the evidence. *See United States v. Jennings*, 991 F.2d 725, 733 (11th Cir. 1993) ("Thus, the appropriate guideline section is determined solely by conduct charged in the indictment for which the defendant has been convicted"); *United States v. Street*, 66 F.3d 969, 979 (8th Cir. 1995); *United States v. Partee*, 31 F.3d 529, 531 (7th Cir. 1994) ("'offense of conviction' . . . refers only to the offense conduct charged in the count of the indictment or information of which the defendant was convicted") (cleaned up).

The Statutory Index does not list § 1752(a)(2) separately from the other statutory subsections in § 1752. Rather, it refers to § 1752 as a whole, and it includes two possible offense Guidelines for violations of § 1752: § 2A2.4 (Obstructing or Impeding of Officers) and § 2B2.3 (Trespass). *See* USSG app. A at 567.[5]

To determine the "most appropriate" guideline, it is important to situate each section within the overall structure of the Guidelines. Section 2A2.4, entitled "Obstruction or Impeding of Officers," is located in the Part of the guidelines covering

---

[5] The PSR, which the court adopted without change, incorrectly stated that the appropriate guideline was USSG § 2X5.2 (Class A Misdemeanors (Not Covered by Another Specific Offense Guideline)), which applies to "Class A misdemeanor offenses that are specifically referenced in Appendix A (Statutory Index) to this guideline" and "Class A misdemeanor offenses that have not been referenced in Appendix A." *Id.*, cmt. n.1. The PSR was incorrect for two reasons: *first*, because § 1752 *is* referenced in Appendix A (it references USSG § 2A2.4 or § 2B2.3 but not § 2X5.2, which independently states that it does not apply where the index references a separate guideline). *See* USSG § 2X5.2 cmt. n.1 ("Do not apply this guideline to a Class A misdemeanor that has been specifically referenced in Appendix A to another Chapter Two guideline." *Second*, the PSR stated that § 2X5.2 "provides that if the offense is a Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline," which then led the PSR (erroneously) to § 2A2.4. PSR ¶29. This is not what § 2X5.2 provides; it provides a base offense level of 6.

"Offenses Against the Person" and in the Subpart for "Assault." Section 2B2.3, by contrast, is entitled "Trespass," and is located in the Part covering "Basic Economic Offenses," and the Subpart entitled "Burglary and Trespass." Given this structure, it is clear that § 2A2.4 is designed to cover offenses against a person with a specific status, such as federal officers, while § 2B2.3 is designed to cover unauthorized invasions of property. This interpretation finds support in a comparison of statutes referred to each guideline:

| Section 2A2.4 | Section 2B2.3 |
|---|---|
| 18 U.S.C. § 111 related to assaulting, resisting, or impeding certain officers or employees | 18 U.S.C. § 1030(a)(3) related intentionally and without authorization accessing a nonpublic government computer |
| 18 U.S.C. § 1501 related to assaults on process servers | 18 U.S.C. § 1036 related to entering or attempting to enter by fraud or false pretenses United States property, vessels, or aircraft |
| 18 U.S.C. § 1502 related to resisting an extradition agent | 18 U.S.C. § 2199 related to stowaways on vessels or aircraft[6] |
| 18 U.S.C. § 2237(a)(1) related to knowingly failing to obey an order by an authorized Federal law enforcement officer to heave to that vessel | 38 U.S.C. § 2413 related to carrying out a demonstration on the property of a cemetery under the control of the National Cemetery Administration or on the property of Arlington National Cemetery |
| 18 U.S.C. § 2237(a)(2)(A) related to forcibly resisting, opposing, preventing, impeding, intimidating, or interfering | 42 U.S.C. § 7270b related to trespassing on Strategic Petroleum Reserve facilities |

---

[6] Section 2199 includes aggravated factors such as intentionally committing serious bodily injury and intentionally causing death, and thus the Statutory Index also refers to Part A "Offenses Against the Person" Guidelines as well.

| | |
|---|---|
| with a boarding or other law enforcement action authorized by any Federal law or resisting a lawful arrest | |
| 18 U.S.C. § 3056(d) related to knowingly and willfully obstructing, resisting, or interfering with a federal law enforcement agent engaged in the performance of certain protective functions | |

To be sure, § 1752 proscribes both types of conduct—offenses against official persons and offenses against federal property—hence the Statutory Index's reference to both. Crucially, however, Mr. Nassif was *not* charged with an offense against a person, *i.e.*, knowingly engaging in any act of physical violence against a person. Nor was Mr. Nassif convicted under a subsection proscribing conduct against a person. He was convicted under § 1752(a)(2), which is designed to prevent disorder in federal restricted buildings or grounds that disrupts proceedings.

In concluding otherwise, the district court relied on evidence in the record, *see* A:374-75, but did not focus as required on the offense conduct charged in the count of which Mr. Nassif was convicted. The offense conduct charged in Count 2 of the indictment states:

> On or about January 6, 2021, within the District of Columbia, JOHN MARON NASSIF, knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engaged in disorderly and disruptive conduct in, and within such proximity to the United States Capitol, a restricted building, when, and so that, such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

A:13-14. This language says nothing about a crime against a person or a crime against a federal officer. In fact, it says nothing about officers at all. It is self-evidently

focused on the place of the conduct (the U.S. Capitol) and the disruption of government business and official functions. It established § 2B2.3 as the appropriate guideline for Mr. Nassir's offense of conviction. The district court was wrong to conclude otherwise.

The district court was also wrong to conclude that 18 U.S.C. § 2237(a)(2)(A)'s reference to § 2A2.4 meant that § 1752(a)(2) was appropriately referred to that Guideline as well. *See* A:374 (district court stating "[§ 2237(a)(2)(A)] prohibits interfering with a process or an action, boarding a vessel, rather than interfering with a person" and "therefore, it's just the same as 1752"). Unlike § 1752(a)(2), § 2237(a)(2)(A) requires either "forcible" conduct that interferes with boarding a vessel or resisting a lawful arrest. Forcible conduct against a "boarding" cannot be accomplished without force against the person who is boarding the vessel; resisting a lawful arrest cannot be accomplished without resistance against the law enforcement officer effecting the arresting. Section 2237(a)(2)(A) simply does not present conduct similar to § 1752(a)(2), where unauthorized access to a restricted building can disrupt official functions without forcible conduct or resistance against an individual.

In *United States v. Brodnax*, Judge Friedman ruled that § 2B2.3 was the appropriate guideline for a conviction under § 1752(a)(2), and not § 2A2.4. *See* Order, *United States v. Brodnax*, Case No.: 1:21-cr-350, Doc. 61 (Aug. 18. 2022). And in *United States v. Marquez*, Case No: 1:21-cr-136, both the government in its plea agreement and Probation in the PSR—which was then adopted by the district court—

27

concluded that a § 1752(a)(2) violation was properly referenced to § 2B2.3.[7]  *See* Plea

Ag't, *United States v. Marquez*, Case No: 1:21-cr-136, Doc. 21 at 2-3 (Sep. 10, 2021);

Gov't Sent'g Mem., Doc. 28 at 18 (Dec. 2, 2021).

The Guidelines range for Mr. Nassif when erroneously applying § 2A2.4 was in

Zone C and 10 to 16 months (though capped at 12 months because of the statutory

maximum of § 1752(b)(2)). Had the district court applied the § 2B2.3, Mr. Nassif's

Guidelines range would have been in Zone A (allowing for home confinement) and 0

to 6 months. Mr. Nassif was ultimately sentenced to 7 months imprisonment. Given

that the district court relied upon in incorrect Guidelines range to arrive at this

sentence, this Court should vacate the sentence and remand for resentencing.

III.    **The district court erroneously and unconstitutionally penalized
        Mr. Nassif for exercising his Sixth Amendment right to trial.**

This Court reviews purely legal questions *de novo. United States v. Fischer*, 64

F.4th 329, 335 (D.C. Cir. 2023); *United States v. Verussio*, 762 F.3d 1, 13 (D.C. Cir.

2014). Thus, constitutional challenges are reviewed *de novo. United States v. Popa*,

187 F.3d 672, 674 (D.C. Cir. 1999).

At sentencing, the district court expressly penalized Mr. Nassif for exercising

his Sixth Amendment right to trial. After the district court expressed skepticism that

---

[7] Curiously, the PSR here recognized that Mr. Nassif's Count 1 conviction for
18 U.S.C. § 1752(a)(1), *should be* sentenced under § 2B2.3. *See* PSR ¶28. Both
§ 1752(a)(1) and § 1752(a)(2) are primarily concerned with unauthorized access to
restricted buildings and grounds, and both should be sentenced under § 2B2.3.  That
the trespass disrupted the orderly conduct of official functions did not transmute his
offense into one *against* a person to bring it within the ambit of § 2A2.4.

it should consider the need to avoid an unwarranted sentencing disparity between cases involving guilty pleas and Mr. Nassif's case, trial counsel for Mr. Nassif argued that Mr. Nassif should not be penalized for going to trial. A:383. The district court replied that defendants "are penalized for going to trial in terms of the acceptance of responsibility." *Id.* Counsel then contended that the fact that Mr. Nassif went to trial was already accounted for in the sentencing analysis through the denial of an acceptance of responsibility reduction and through the obstruction of justice enhancement. The district court later emphasized that it considered that Mr. Nassif had gone to trial in addition to the lack of acceptance of responsibility. *Id.* at 387.

The district court's explicit trial penalty was impermissible. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Although the D.C. Circuit has left "dangling the important question as to whether a trial judge can lay on extra time for going to trial," multiple other "circuits have unanimously acknowledged [that] when a judge increases a defendant's sentence specifically because he pleaded [not] guilty, the constitutional concerns are serious." *United States v. Jones*, 997 F.2d 1475, 1481, 1482 (D.C. Cir. 1993) (Mikva, J., dissenting); *see United States v. Monroe*, 943 F.2d 1007, 1018 (9th Cir. 1991) ("[W]here a disparity in sentences suggests that a defendant who pleaded not guilty was being penalized for exercising his constitutional right to a trial, the reasons for the disparity must appear in the record."); *United States v. Frost*, 914 F.2d 756, 774 (6th Cir.1990) ("[I]t is improper for a district judge to penalize a defendant for

exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt."); *United States v. Crocker*, 788 F.2d 802, 809 & n. 3 (1st Cir.1986) ("The judge's remarks on how the presentation of a frivolous case and the ensuing waste of judicial resources could be factors in determining the sentence to be imposed are sufficient to establish that there was a reasonable likelihood of vindictiveness."); *United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir. 1985) ("The '[a]ugmentation of sentence' based on a defendant's decision to 'stand on [his] right to put the Government to its proof rather than plead guilty' is clearly improper." (*quoting United States v. Araujo*, 539 F.2d 287, 291-92 (2nd Cir.1976))); *United States v. Roe*, 670 F.2d 956, 973 (11th Cir.1982) ("[T]he sentencing court may not present the defendant with a choice between admitting his guilt and enduring a harsher sentence for failing to do so."); *United States v. Wright*, 533 F.2d 214, 216 (5th Cir.1976) ("[A] trial court may not pressure defendants, who have been found guilty following a trial by jury, to confess their guilt prior to the imposition of sentence"); *Hess v. United States*, 496 F.2d 936, 938 (8th Cir.1974) ("This circuit has joined a host of other courts in recognizing that whether a defendant exercises his right to trial by jury to determine his guilt or innocence must have no bearing on the sentence imposed.").

Moreover, "section 3E1.1 does not allow the judge to weigh against the defendant the defendant's exercise of constitutional or statutory rights. The exercise of these rights may diminish the defendant's chances of being granted the two-level reduction, not because it is weighed against him but because it is likely that there is

less evidence of acceptance to weigh in his favor. The sentencing court, however, may not weigh the exercise of these rights against the defendant." *United States v. Rodriguez,* 959 F.2d 193, 197 (11th Cir. 1992). Indeed, "[t]he Guidelines express in several places and in their overarching policy, an intention that sentencing courts not weigh against a defendant the fact that he has exercised the constitutional right to a trial. This must be as true in establishing the appropriate sentence within the applicable Guidelines range as it is in determining eligibility for an acceptance of responsibility adjustment." *United States v. Jones*, 997 F.2d 1475, 1488 (D.C. Cir. 1993) (Wald, J., dissenting). Here, the district court's language "looks much more like the 'unilateral imposition of a penalty upon a defendant who has chosen to exercise a legal right' that the *Bordenkircher* Court explicitly rejected as unconstitutional." *Jones*, 997 F.2d at 1482 (Mikva, J., dissenting) (quoting *Bordenkircher*, 434 U.S. at 362). The trial penalty imposed on Mr. Nassif was unconstitutional.

CONCLUSION

Mr. Nassif respectfully requests that this Court find that § 5104(e)(2)(G) is unconstitutional and vacate his conviction on Count Four. Mr. Nassif also asks that this Court vacate his sentence and remand for resentencing.

Respectfully submitted,

A. Fitzgerald Hall, Esq.
Federal Defender

*/s/ Melissa Fussell*
Melissa Fussell, Esq.
Assistant Federal Defender
Office of the Federal Defender
Middle District of Florida
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: 407-648-6338
E-Mail: Melissa_Fussell@fd.org

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Counsel for John Maron Nassif certifies that this brief complies with the length limitations set forth in Fed. R. App. P. 32(a)(7). The brief contains 8,770 countable words. Century Schoolbook 12 is the style and type size used in this brief.

*/s/ Melissa Fussell*
Melissa Fussell, Esq.
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2023, I electronically filed this brief with the Clerk of Court using the CM/ECF system, which will give notice of filing to all counsel of record. A copy was also served by First Class United States mail, postage prepaid, to the Defendant-Appellant, John Maron Nassif.

*/s/ Melissa Fussell*
Melissa Fussell, Esq.
Assistant Federal Defender

33

# ADDENDUM

## 40 U.S.C § 5104 (e)(2)

**(e) Capitol Grounds and Buildings security.--**

    **(2) Violent entry and disorderly conduct.--**An individual or group of individuals may not willfully and knowingly--

        **(A)** enter or remain on the floor of either House of Congress or in any cloakroom or lobby adjacent to that floor, in the Rayburn Room of the House of Representatives, or in the Marble Room of the Senate, unless authorized to do so pursuant to rules adopted, or an authorization given, by that House;

        **(B)** enter or remain in the gallery of either House of Congress in violation of rules governing admission to the gallery adopted by that House or pursuant to an authorization given by that House;

        **(C)** with the intent to disrupt the orderly conduct of official business, enter or remain in a room in any of the Capitol Buildings set aside or designated for the use of—

            **(i)** either House of Congress or a Member, committee, officer, or employee of Congress, or either House of Congress; or

            **(ii)** the Library of Congress;

        **(D)** utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress;

        **(E)** obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings;

        **(F)** engage in an act of physical violence in the Grounds or any of the Capitol Buildings; or

        **(G)** parade, demonstrate, or picket in any of the Capitol Buildings.

i

## 18 U.S.C § 1752(a)

**(a) Whoever --**

**(1)** knowingly enters or remains in any restricted building or grounds without lawful authority to do so;

**(2)** knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

**(3)** knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstructs or impedes ingress or egress to or from any restricted building or grounds; or

**(4)** knowingly engages in any act of physical violence against any person or property in any restricted building or grounds;

**(5)** knowingly and willfully operates an unmanned aircraft system with the intent to knowingly and willfully direct or otherwise cause such unmanned aircraft system to enter or operate within or above a restricted building or grounds; or attempts or conspires to do so, shall be punished as provided in subsection (b).

## USSG § 2B2.3, Trespass

**(a)** Base Offense Level: 4

**(b)** Specific Offense Characteristics

    **(1)** (Apply the greater) If--

        **(A)** the trespass occurred (i) at a secure government facility; (ii) at a nuclear energy facility; (iii) on a vessel or aircraft of the United States; (iv) in a secure area of an airport or a seaport; (v) at a residence; (vi) at Arlington National Cemetery or a cemetery under the control of the National Cemetery Administration; (vii) at any restricted building or grounds; or (viii) on a computer system used (I) to maintain or operate a critical infrastructure; or (II) by or for a government entity in furtherance of the administration of justice, national defense, or national security, increase by 2 levels; or

        **(B)** the trespass occurred at the White House or its grounds, or the Vice President's official residence or its grounds, increase by 4 levels.

    **(2)** If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

**(3)** If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $2,500 but did not exceed $6,500, increase by 1 level; or (ii) exceeded $6,500, increase by the number of levels from the table in § 2B 1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

**(c)** Cross Reference

**(1)** If the offense was committed with the intent to commit a felony offense, apply § 2Xl .1 (Attempt, Solicitation, or Conspiracy) in respect to that felony offense, if the resulting offense level is greater than that determined above.

### USSG, § 2A2.4, Obstructing or Impeding Officers

**(a)** Base Offense Level: 10

**(b)** Specific Offense Characteristics

**(1)** If (A) the offense involved physical contact; or (B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels.

**(2)** If the victim sustained bodily injury, increase by 2 levels.

**(c)** Cross Reference

**(1)** If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault).