ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 29, 2023

BRIEF FOR APPELLEE
————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————

No. 23-3069
————————————

UNITED STATES OF AMERICA,                      Appellee,

v.

JOHN MARON NASSIF,                      Appellant.
————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
————————————

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
JOHN P. MANNARINO
BRIAN MORGAN
ELIZABETH NASH ERIKSEN
* TIMOTHY R. CAHILL
D.C. Bar #1032630
Assistant United States Attorneys
* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Timothy.Cahill@usdoj.gov
(202) 252-6829

Cr. No. 21-421 (JDB)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee states as follows:

## Parties and Amici

The parties to this appeal are appellant, John Maron Nassif, and appellee, the United States of America. There are no amici.

## Rulings Under Review

This is an appeal from a judgment by the Honorable John D. Bates finding Nassif guilty of four offenses arising from his participation in the January 6, 2021, assault on the United States Capitol, and sentencing him to an aggregate of seven months' incarceration. Nassif alleges that his conviction under 40 U.S.C. § 5104(e)(2)(G) must be vacated because the statute is unconstitutionally overbroad and vague on its face. Nassif also seeks a remand for resentencing based on his allegations that the district court incorrectly applied U.S.S.G. § 2A2.4 to his conviction under 18 U.S.C. § 1752(a)(2) and improperly penalized him for going to trial.

## Related Cases

Appellee is unaware of any related cases.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

COUNTERSTATEMENT OF THE CASE.............................................. 1

   The Trial ................................................................................ 2

      The Government's Evidence ..................................................... 2

      The Defense Evidence................................................................ 4

      The District Court's Findings.................................................... 4

SUMMARY OF ARGUMENT....................................................... 5

ARGUMENT ................................................................................ 8

  I.  Section 5104(e)(2)(G) Is Not Unconstitutional on Its Face
     Due to Overbreadth or Vagueness..............................................8

     A.  Additional Background........................................................8

        1.  Nassif's Motion to Dismiss...........................................8

        2.  Background for § 5104(e)(2)(G)....................................9

     B.  Section 5104(e)(2)(G) Is Not Facially Overbroad Under
        the First Amendment. .......................................................11

        1.  Standard of Review and Applicable Legal
            Principles....................................................................11

        2.  Section 5104(e)(2)(G) Applies to Conduct That
            Would Tend to Disrupt the Orderly Business of
            Congress. ....................................................................13

        3.  Section 5104(e)(2)(G) Is Permissible as a
            Viewpoint Neutral, Reasonable Regulation in a
            Nonpublic Forum. .......................................................18

           a.  The Capitol Buildings' Interiors Are a
              Nonpublic Forum. .................................................20

  b. Even if the Interiors of the Capitol Buildings Were a Public Forum, § 5104(e)(2)(G) Would Be Constitutionally Sound. ................... 25

  4. Section 5104(e)(2)(G) Is Not Substantially Overbroad Relative to Its Plainly Legitimate Sweep .................................................... 26

  5. Alternatively, if This Court Finds That § 5104(e)(2)(G) Is Overbroad, It Should Adopt a Narrowing Construction. ............................... 30

 C. Section 5104(e)(2)(G) Is Not Void for Unconstitutional Vagueness. .......................................................... 31

  1. Standard of Review and Applicable Legal Principles ................................................... 31

  2. Discussion .................................................... 33

II. The District Court Properly Applied U.S.S.G. § 2A2.4 to Nassif's Conviction for Count Two. ........................................... 39

 A. Additional Background ....................................... 39

 B. Standard of Review and Legal Principles ........................... 42

 C. U.S.S.G. § 2A2.4 Applies to § 1752(a)(2). ........................... 43

III. The District Court Did Not Unconstitutionally Penalize Nassif for Going to Trial. .......................................................... 47

 A. Additional Background ....................................... 47

 B. Standard of Review and Legal Principles ........................... 50

 C. Nassif's Claim That the District Court Improperly Penalized Him for Exercising His Right to Trial Is Foreclosed by Precedent and Disproved by the Record. .... 52

CONCLUSION ................................................................. 58

# TABLE OF AUTHORITIES*

*Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*,
482 U.S. 569 (1987) ............................................................... 19

*Berg v. United States*, 631 A.2d 394 (D.C. 1993) ......................... 23, 24, 28

\* *Boos v. Barry*, 485 U.S. 312 (1998) .................................................. 26, 30

\* *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50
(D.D.C. 2000) ..........................................13, 14, 21, 23, 24, 25, 28, 30, 35

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984) ....... 25, 26

*Corbitt v. New Jersey*, 439 U.S. 212 (1978) ............................................ 53

\* *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*,
473 U.S. 788 (1985) ......................................................................... 22, 23

*Dubkin v. United States,* 119 Daily Wash. L. Rptr. 2213
(D.C. Super. Ct. 1991) ........................................................................ 22

*Gall v. United States*, 552 U.S. 38 (2007) ............................................. 50

*Greater New Orleans Broadcasting Ass'n, Inc. v. United States*,
527 U.S. 173 (1999) ............................................................................ 21

*Grogan v. United States*, 271 A.3d 196 (D.C. 2022) ............................... 28

*Hasty v. United States*, 669 A.2d 127 (D.C. 1995) ................................. 31

---

\* Authorities upon which we chiefly rely are marked with asterisks.

v

*Hays v. Sebelius*, 589 F.3d 1279 (D.C. Cir. 2009) ................................... 14

*Hill v. Colorado*, 530 U.S. 703 (2000) ............................................. 19, 38

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672 (1992) .... 18

*Jarecki v. G. D. Searle & Co.,* 367 U.S. 303 (1961) .................................. 14

*Jeanette Rankin Brigade v. Chief of Capitol Police,*
342 F. Supp. 575 (D.D.C.), *aff'd* 409 U.S. 972 (1972) ..................... 10, 24

*Johnson v. United States*, 576 U.S. 591 (2015) ........................................ 32

*Kroll v. United States*, 590 F. Supp. 1282 (D.D.C. 1983) ....................... 24

*Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002) .......... 10, 21, 24

*Los Angeles Police Dep't v. United Reporting Publ'g Corp.,*
528 U.S. 32 (1999) ............................................................. 11, 12

*Markowitz v. United States*, 598 A.2d 398 (D.C. 1991) ............... 22, 23, 28

*Members of the City Council v. Taxpayers for Vincent,*
466 U.S. 789 (1984) ......................................................... 12, 24, 30

*Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876 (2018) ................. 19

*New York v. Ferber*, 458 U.S. 747 (1982) ................................................ 12

\* *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37
(1983) ........................................................................ 18, 19, 20

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ........................... 20

*Rose v. Locke*, 423 U.S. 48 (1975) .......................................................... 32

*Sekhar v. United States*, 570 U.S. 729 (2013) ........................................ 15

*Skilling v. United States*, 561 U.S. 358 (2010) ........................................32

*Tetaz v. District of Columbia*, 976 A.2d 907 (D.C. 2009)..............22, 23, 28

*United States v. Barnes*, 295 F.3d 1354 (D.C. Cir. 2002) .......................51

*United States v. Barry*, No. 18-mj-111 (D.D.C. 2019) ..............................27

*United States v. Brodnax*, No. 21-cr-350 (D.D.C. 2022) ...........................41

\* *United States v. Bronstein*, 849 F.3d 1101
  (D.C. Cir. 2017)........................................................... 31, 32, 33, 37, 38

*United States v. Carey*, No. M-9066-96, slip op.
  (D.C. Super. Ct. Jan. 3, 1997)................................................................22

*United States v. Cooper*, 886 F.3d 146 (D.C. Cir. 2018) ........................42

*United States v. Crocker*, 788 F.2d 802 (1st Cir. 1986) ..........................57

*United States v. Gewin*, 759 F.3d 72 (D.C. Cir. 2014) ............................51

*United States v. Gray*, No. 21-cr-495 (D.D.C. 2022) ..........................35, 38

\* *United States v. Hansen*, 143 S. Ct. 1932 (2023) .................. 12, 24, 26, 30

*United States v. Hutchings*, 757 F.2d 11 (2d Cir. 1985) .........................57

\* *United States v. Jones*, 997 F.2d 1475 (D.C. Cir. 1993)................ 7, 52, 54

*United States v. Knight*, 824 F.3d 1105 (D.C. Cir. 2016).........................50

*United States v. Lanier*, 520 U.S. 259 (1997)..........................................32

*United States v. Law*, 806 F.3d 1103 (D.C. Cir. 2015)............................51

*United States v. Lawrence*, 662 F.3d 551 (D.C. Cir. 2011) ...............51, 55

\* *United States v. Lopesierra-Gutierrez*, 708 F.3d 193
(D.C. Cir. 2013) .......................................................... 7, 51, 54

*United States v. Marquez*, No. 21-cr-136 (D.D.C. 2021) ......................... 47

*United States v. McKeever*, 824 F.3d 1113 (D.C. Cir. 2016) .................. 42

*United States v. Montanez*, 36 F.4th 824 (8th Cir. 2022) ......................... 41

*United States v. Munchel*, No. 21-cr-118 (D.D.C. 2023) ................... 35, 38

*United States v. Nassif*, No. 21-cr-421 (D.D.C. 2022) ............................ 30

*United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29 (1963) ................ 33

*United States v. Otunyo*, 63 F.4th 948 (D.C. Cir. 2023) .................... 51, 54

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000) ........ 21

*United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) ........................... 11

*United States v. Rhine*, No. 21-cr-687 (D.D.C. 2022) .................. 35, 36, 38

*United States v. (George) Rivera*, 293 F.3d 584 (2d Cir. 2002) ............... 42

*United States v. (Jesus) Rivera*, No. 21-cr-60 (D.D.C. 2022) ................. 31

*United States v. Sheppard*, No. 21-cr-203 (D.D.C. 2022)............. 35, 36, 38

*United States v. Stenz*, No. 21-cr-456 (D.D.C. 2022) ................................ 36

\* *United States v. Williams*, 553 U.S. 285 (2008) ............... 12, 13, 24, 27, 32

*Virginia v. Hicks,* 539 U.S. 113 (2003) .................................................... 19

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ............................... 26

*Washington State Grange v. Washington State Republican Party,*
552 U.S. 442 (2008) ................................................................ 11

*Wheelock v. United States,* 552 A.2d 503 (D.C. 1988) ............................. 17

*Widmar v. Vincent,* 454 U.S. 263 (1981) .................................................. 21

# Other Authorities

18 U.S.C. § 111(a)(1) ........................................................ 43

18 U.S.C. § 1501 ........................................................... 43

18 U.S.C. § 1502 ........................................................... 44

18 U.S.C. § 1752(a)(1) ............................................... 1, 45, 46

18 U.S.C. § 1752(a)(2) .................... 1, 6, 37, 39, 40, 41, 43, 44, 45, 46, 47

18 U.S.C. § 2237(a)(1) ..................................................... 44

18 U.S.C. § 2237(a)(2)(A) ...................................... 40, 41, 44, 45

18 U.S.C. § 3056(d) ....................................................... 44

40 U.S.C. § 193g (1964) .................................................. 9, 10

40 U.S.C. § 5101 .......................................................... 10

40 U.S.C. § 5102 .......................................................... 10

40 U.S.C. § 5104(e) .............................................. 14, 16, 29, 35

40 U.S.C. § 5104(e)(2) ............................................. 14, 15, 35

40 U.S.C. § 5104(e)(2)(D) ........................................ 1, 14, 16, 35

40 U.S.C. § 5104(e)(2)(G)
...2, 5, 8, 9, 13, 16, 17, 18, 23, 24, 25, 26, 27, 28, 29, 30, 33, 34, 35, 36, 37, 38

40 U.S.C. § 5104(e)(3) .................................................... 29

40 U.S.C. § 6134 ........................................................ 33, 34

D.C. Code § 10-503.16(b)(7) .................................................... 28, 31

D.C. Code § 9-112(b)(7).............................................................. 28

Fed. R. App. P. 4(b)..................................................................... 2

U.S.S.G. § 1B1.2......................................................................... 42

U.S.S.G. § 2A2.4 .............................. 6, 39, 40, 41, 42, 43, 44, 45, 46, 47

U.S.S.G. § 2B2.3........................................................ 40, 43, 46, 47

U.S.S.G. § 2X5.2 ....................................................................... 39

U.S.S.G. § 3C1.1......................................................................... 47

U.S.S.G. § 3E1.1................................................................ 48, 52, 55

Black's Law Dictionary (11th ed. 2019) ...................................... 15

Black's Law Dictionary (rev. 4th ed. 1968) ................................ 15

Capitol Police Regulations § 12.2.10......................................... 16

H. REP. NO. 90-745, *reprinted in* 1967 U.S.C.C.A.N. 1739 ................ 9, 15

Oxford English Dictionary (2nd ed. 1989) .................................. 14

Webster's Third New Int'l Dictionary (1965)............................ 13

# ISSUES PRESENTED

I.    Whether 40 U.S.C. § 5104(e)(2)(G) is facially unconstitutional due to First Amendment overbreadth and vagueness, where Nassif has not shown that the statute is substantially overbroad relative to its plainly legitimate sweep, and the statute, properly construed, provides sufficient guidance as to what is prohibited.

II.    Whether the district court properly applied § 2A2.4 of the United States Sentencing Guidelines (U.S.S.G.) to Nassif's conviction under 18 U.S.C. § 1752(a)(2), where a defendant who violates § 1752(a)(2) by "in fact, imped[ing] or disrupt[ing] the orderly conduct of Government business or official functions" has necessarily obstructed or impeded the government officials conducting the business or functions in question.

III.    Whether the district court improperly penalized Nassif for exercising his right to trial, where the court properly distinguished Nassif from defendants who pleaded guilty in connection with their conduct on January 6, 2021, and the record disproves Nassif's claim that the court "expressly penalized" him for going to trial.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————————

No. 23-3069

————————————————

UNITED STATES OF AMERICA,                                        Appellee,

v.

JOHN MARON NASSIF,                                        Appellant.

————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————————

BRIEF FOR APPELLEE

————————————————

## COUNTERSTATEMENT OF THE CASE

On June 22, 2021, appellant John Maron Nassif was charged by
information with four offenses arising from his participation in the
January 6, 2021, assault on the United States Capitol: (1) entering and
remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1);
(2) disorderly and disruptive conduct in a restricted building, in violation
of 18 U.S.C. § 1752(a)(2); (3) violent entry and disorderly conduct in a
Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and

(4) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Appendix (A) 13–15).

On December 8, 2022, after a bench trial, the Honorable John D. found Nassif guilty of all four charges (A298). On April 27, 2023, the district court sentenced Nassif to concurrent terms of imprisonment of seven months each for Counts One and Two (the § 1752 counts) and six months each for Counts Three and Four (the § 5104 counts) (A399–401). Nassif noted a timely appeal on May 12, 2023 (A407–08).[1]

## The Trial

### *The Government's Evidence*

On January 6, 2021, thousands of people descended on the U.S. Capitol Building and Grounds when a joint session of Congress convened to certify the votes of the Electoral College for the 2020 Presidential Election (A97, A114). Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session of Congress (A97).

---

[1] Although Nassif's appeal was filed 15 days after he was sentenced, it was not untimely under Fed. R. App. P. 4(b) because the district court's judgment was not entered on the public docket until May 8, 2023 (A11).

At all relevant times, the Capitol Grounds and Capitol Building were closed to members of the public (A94–97, A103–04).

Appellant Nassif was among a group of rioters who entered the Capitol Grounds and Capitol Building that day (A116, A132–33). After the Capitol was breached by others, Nassif traveled to the east side of the Capitol, where the doors to the Rotunda had been forced open, and the glass from the doors' windows had been shattered (A106–08, A116, A165–66). After police officers managed to briefly close the doors, Nassif led a chant of "Whose house? Our house!" outside, as other rioters demanded to be let into the building (A117–18, A124, A166–67).

When the Rotunda doors were forced back open, Nassif entered the Capitol (A132–33). Alarms were sounding throughout the building (A144–45, A168). Inside the Rotunda, Nassif shouted at other rioters who were exiting the building, encouraging them to "keep fighting" (A129). Nassif witnessed violent pushing within the Rotunda; police tried to push rioters out, and a group of rioters physically resisted (A130, A135, A180–82). Nassif gestured to the rioters outside the Capitol, motioning them to come inside (A134–35). After about 10 minutes inside the Capitol, Nassif left through the same door he had entered (A145, A157).

## The Defense Evidence

Nassif testified that after attending the rally at the Ellipse, he heard that "people were being let into the Capitol," and he walked there "to see what was going on" (A206, A210). From outside the Capitol, Nassif was involuntarily pushed inside (A221–22, A225). He saw police at the doors, but he thought they were "just trying to facilitate an orderly ingress and egress" (A225). Nassif testified that he did not witness any violence inside the Rotunda (A256–57). He also testified that he did not observe any police wearing riot gear, and he believed it was permissible for him and the other rioters to remain inside the Capitol (A225, A251–52). Nassif denied that he shouted the words "keep fighting," and he claimed that video evidence showed someone else shouting those words (A234).

## The District Court's Findings

The district court found Nassif guilty of all four charged offenses (A298). The court found that Nassif's testimony was "not credible," as it was "inconsistent with what the videos show and with common sense" (A288). The court noted that Nassif's description of why he went to the Capitol "changed a bit over time," and it discredited his claim that "somehow he did not see the riot police right next to him as he entered,

4

despite video evidence showing him staring directly at those riot police"
(A288–89). The court also found "simply inconceivable" Nassif's claim that
he believed "the police changed their minds and decided that the best
course of action was to let the mob in," even as members of the mob "could
be heard screaming, for example, you're going to need a f**king Army to
remove us" (A290). The court also found that video evidence directly
contradicted Nassif's claims: that "he was involuntarily pushed into the
Capitol" (A289), that he witnessed no violence inside the Rotunda (A288),
and that he never shouted "keep fighting" as encouragement to fellow
rioters (A289). The court did, however, conclude that there was "no
evidence that [Nassif] engaged in any sort of violence," and it noted that
his conduct "was certainly not as extreme as others on that day" (A289).

## Summary of Argument

Nassif's claim (Brief for Appellant (Br.) at 6–22) that 40 U.S.C.
§ 5104(e)(2)(G) is facially unconstitutional due to First Amendment
overbreadth and vagueness should be rejected. Nassif's overbreadth
challenge fails because, properly construed, the statute applies only to
"demonstrations" that would tend to disrupt the orderly business of
Congress. Furthermore, the statute applies only within the Capitol

Buildings, and it is thus permissible as a viewpoint neutral, reasonable regulation in a nonpublic forum. Even if the interiors of the Capitol Buildings were assumed to be public forums, however, the statute would pass constitutional muster as a reasonable time, place, and manner restriction narrowly tailored to serve the compelling government interest of ensuring that the activities of Congress can proceed without disruption. Nassif's vagueness challenge also fails because, in the context of the statute's application to the interiors of the Capitol Buildings, its terms proscribe determinable conduct.

Nassif's second claim (Br. at 22–28), that the district court incorrectly applied U.S.S.G. § 2A2.4 to determine the base offense level for his conviction under 18 U.S.C. § 1752(a)(2), is also unavailing. Section 2A2.4, titled "Obstructing or Impeding Officers," is the most appropriate guideline for a violation of § 1752(a)(2), which criminalizes "engag[ing] in disorderly or disruptive conduct" that "in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). A defendant who commits disorderly and disruptive conduct that "in fact" impedes or disrupts government business or official functions has

necessarily obstructed or impeded the government officials who are conducting the business or functions in question.

Nassif's third claim (Br. at 28–31), that the district court improperly penalized him for exercising his right to trial, likewise fails. The district court properly distinguished Nassif from defendants who pleaded guilty in connection with their conduct on January 6, 2021, and Nassif's claim to the contrary is foreclosed by this Court's precedent. See *United States v. Jones*, 997 F.2d 1475, 1476–80 (D.C. Cir. 1993) (en banc); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 208 (D.C. Cir. 2013) ("That some defendants pled guilty while others did not provides a perfectly valid basis for a sentencing disparity, and such disparity imposed no impermissible burden on [the defendant's] jury-trial right.") (citation omitted). To the extent Nassif asserts (Br. at 28) that certain statements at the sentencing hearing showed the district court "expressly penalized" him for exercising his right to trial, this claim is disproved by the record.

ARGUMENT

**I. Section 5104(e)(2)(G) Is Not Unconstitutional on Its Face Due to Overbreadth or Vagueness.**

**A. Additional Background**

**1. Nassif's Motion to Dismiss**

On June 21, 2022, Nassif moved to dismiss Count Four, arguing that the statute on which it was based, 40 U.S.C. § 5104(e)(2)(G), was facially unconstitutional due to First Amendment overbreadth and vagueness (A16–28). The government opposed (A29–41).

On September 12, 2022, the district court denied the motion (A59–82). First, the court held the statute was not substantially overbroad relative to its plainly legitimate sweep in terms of permissible applications under the First Amendment (A63–70). The court found the statute was "limited to the interior of the Capitol buildings," a nonpublic forum, and that its restrictions were "viewpoint-neutral" and "reasonable in light of the statute's purposes" — i.e., "permitting Congress peaceably to carry out its lawmaking responsibility and allowing citizens to bring their concerns to their legislators" (A67–68) (internal quotation marks omitted). The court found it unnecessary to decide whether § 5104(e)(2)(G) "bars only disruptive conduct" (A67) because, either way, the statute was permissible

8

under the First Amendment as a "reasonable rule" that "targets activities that Congress reasonably could have concluded would disrupt its legislative process" (A68). Second, the district court held that the statute was not unconstitutionally vague since it "provides sufficient guidance as to what is prohibited" (A73).[2]

## 2. Background for § 5104(e)(2)(G)

Congress passed a predecessor statute to § 5104 in 1946. *See* Act of July 31, 1946, 60 Stat. 719, 720. One provision of the 1946 statute made it a crime to "parade, stand, or move in processions or assemblages" or to display "any flag, banner or device designed or adapted to bring into public notice any party, organization, or movement" on the "United States Capitol Grounds." 40 U.S.C. § 193g (1964). The 1946 law "regulate[d] the use of the Capitol Grounds," but it did "not apply to conduct within the buildings on these grounds." H. REP. NO. 90-745, *reprinted in* 1967 U.S.C.C.A.N. 1739, 1741. In 1967, Congress enacted the provision at issue here, which makes it a crime "willfully and knowingly . . . [to] parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C.

---

[2] Nassif twice orally moved to renew his motion to dismiss Count Four at trial, and the district court again denied the motion (A91, A198).

§ 5104(e)(2)(G) (originally enacted as 40 U.S.C. § 193f(b)(7)). Then, as now, the "Capitol Grounds" and "Capitol Buildings" were separately defined. *See* 40 U.S.C. § 5101 ("Capitol Buildings" include, among other structures, "the United States Capitol" and "the Senate and House Office Buildings"); 40 U.S.C. § 5102 ("Capitol Grounds" comprise "all squares, reservations, streets, roadways, walks, and other areas" identified in a 1946 map).[3]

In *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C.), *aff'd* 409 U.S. 972 (1972), a three-judge panel of the D.C. District Court struck down § 193g under the First Amendment. The court found the government's interest in protecting the property around the Capitol was not sufficient "to justify a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on Capitol Grounds," which "have traditionally been open to the public." *Id.* at 583,

---

[3] Nassif thus errs (Br. at 15–16) in asserting that the "Capitol Grounds" include the interiors of buildings such as the Capitol itself, and the House and Senate Office Buildings. The language that Nassif relies upon from *Lederman v. United States*, 291 F.3d 36, 39 (D.C. Cir. 2002), describes a map depicting the full scope of the "Capitol Grounds," which "encompass" the Capitol and other buildings in the sense of including the land that surrounds those buildings. *Lederman*, for example, involved a "small[], approximately sixty-acre area of grass, trees, sidewalks, and a few paved plazas . . . that surrounds the Capitol." *Id.*

585. The court expressly indicated its ruling did not affect other laws regulating conduct in or around the Capitol, including the provision at issue here. *See id*. at 588.

## B. Section 5104(e)(2)(G) Is Not Facially Overbroad Under the First Amendment.

### 1. Standard of Review and Applicable Legal Principles

Facial overbreadth challenges are reviewed de novo. *See United States v. Popa*, 187 F.3d 672, 674 (D.C. Cir. 1999).

In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Facial overbreadth challenges — in which a defendant concedes a statute is constitutional as applied to him, but asserts it is nevertheless invalid because it would be unconstitutional in a "substantial number" of other cases, *id*. at 449 n.6 (internal quotation marks omitted) — are even more exceptional. *See Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (explaining that "the allowance of a facial overbreadth challenge to a statute is an exception to the traditional rule that 'a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may

conceivably be applied unconstitutionally to others in situations not before the Court'") (quoting *New York v. Ferber*, 458 U.S. 747, 767 (1982)).

"Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," overbreadth is "strong medicine" to be employed "only as a last resort." *Los Angeles Police Dep't*, 528 U.S. at 39 (quoting *Ferber*, 458 U.S. at 769). The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be substantial . . . relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do — case-by-case." *United States v. Hansen*, 143 S. Ct. 1932, 1940 (2023). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801.

### 2. Section 5104(e)(2)(G) Applies to Conduct That Would Tend to Disrupt the Orderly Business of Congress.

The first step in an overbreadth analysis is to construe the challenged statute. *See Williams*, 553 U.S. at 293. Both the text and legislative history of § 5104(e)(2)(G) support interpreting the statute as applying to conduct that would tend to disrupt the orderly business of Congress. *See Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

The statutory text, in relevant part, reads as follows: "**Violent entry and disorderly conduct.** — An individual or group of individuals may not willfully and knowingly . . . parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(G) (bold in original). To "parade" means to be part of "a public procession," especially "involving many different people." *Parade*, Merriam–Webster Dictionary Online, https://www.merriam-webster.com/dictionary/parade (last visited August 2, 2023). To picket is to "walk or stand in front" or be "posted [] in a demonstration as a protest against a policy of government." *Picket*, Webster's Third New Int'l Dictionary 1710 (1965). To "demonstrate" means to take part in "[a] public manifestation, by a number of persons, of interest in some public question, or sympathy with some political or other

cause; usually taking the form of a procession and mass-meeting."
*Demonstration*, Oxford English Dictionary (2nd ed. 1989).

Nassif notes (Br. at 7) that "demonstration" can have other meanings in general usage;[4] but here, this term "does not stand alone, but gathers meaning from the words around it" in the statutory text. *Jarecki v. G. D. Searle & Co.,* 367 U.S. 303, 307 (1961). Interpretating "demonstrate" in the context of its immediate neighbors ("parade" and "picket"), as well as the conduct made unlawful in the immediately preceding provisions — *see* §§ 5104(e)(2)(D)-(F) (prohibiting "loud, threatening, or abusive language," "disorderly or disruptive conduct," "obstruct[ing], or imped[ing] passage," and "physical violence") — the statutory term "demonstrate" is properly read as referring to the type of "demonstration" that would tend to disrupt the orderly business of Congress. *See Bynum*, 93 F. Supp. 2d at 58.

This interpretation is supported by the heading of § 5104(e)(2): "Violent entry and disorderly conduct." *See Hays v. Sebelius*, 589 F.3d 1279, 1282 (D.C. Cir. 2009) ("Although the title of a statute and the

---

[4] See, e.g., *Demonstration*, Merriam–Webster Dictionary Online, https://www.merriam-webster.com/dictionary/demonstration (last visited August 2, 2023) ("an outward expression or display" or to take part in "a public display of group feelings toward a person or cause").

heading of a section cannot limit the plain meaning of the text, they remain tools available for the resolution of a doubt about statutory meaning.") (internal quotation marks omitted). "Disorderly conduct" is a legal term of art "transplanted from another legal source" that "brings the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733 (2013). At the time of enactment and today, "disorderly conduct" meant "[b]ehavior that tends to disturb the public peace, offend public morals, or undermine public safety." Black's Law Dictionary 370 (11th ed. 2019) (under "conduct"); Black's Law Dictionary 556 (rev. 4th ed. 1968) ("behavior . . . such as tends to disturb the public peace or decorum, scandalize the community, or shock the public sense of morality.").

This interpretation is further supported by legislative history. The House Report on the 1967 legislation that enacted § 5104(e)(2) states that the law was meant to address "a substantial increase in the number of incidents of excessive disruption or disorderly conduct" at the Capitol in preceding years. H. REP. NO. 90-745, *reprinted in* 1967 U.S.C.C.A.N. 1739, 1740. Congress enacted the statute so that citizens would be "assured of the rights of freedom of expression and of assembly and the right to petition their Government," without extending "license for a minority to delay,

impede, or otherwise disrupt the orderly processes of the legislature which represents all Americans." *Id*. The House Report describes the newly enacted §§ 5104(e)(2)(A)-(G), which includes the provision at issue here, as "a misdemeanor category [of offenses] covering a wide range of disruptive or disorderly conduct." *Id*. at 1742.

Contrary to Nassif's claim (Br. at 18), interpreting "demonstrate" in this manner would not render § 5104(e)(2)(G) surplusage to § 5104(e)(2)(D), as the latter provision is both broader and narrower than the former in different respects. Section (D) applies to a broader range of acts (any "disorderly or disruptive conduct") and broader geographic area ("any place in the [Capitol] Grounds or in any of the Capitol Buildings"). Section (G) applies to three specific types of disruptive conduct ("parad[ing]," "demonstrat[ing]," "picket[ing]") that are barred "in any of the Capitol Buildings," but not necessarily on the Capitol Grounds, where demonstrations are permitted with proper authorization.[5] Section (D), however, has a mens rea element that is not required in section (G): an

---

[5] *See* Capitol Police Regulations § 12.2.10 Permissible Demonstration Areas, *available at* https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/US%20Capitol%20Grounds%20Traffic%20Regulations_Amended%20February%202019.pdf.

"intent to impede, disrupt, or disturb" an active session of Congress or either House of Congress, or the proceedings of a congressional committee. Section (G) does not require specific intent to interfere with particular congressional activities, and it would apply to parades, demonstrations, or picketing that occurred inside the Capitol Buildings regardless of whether either House of Congress or any congressional committee was in session. As the D.C. Court of Appeals has explained, "a strong governmental interest remain[s] . . . in ensuring that the Congressional activities that continue when that body is not in session c[an] continue without interruption." *Wheelock v. United States*, 552 A.2d 503, 507 (D.C. 1988).

For all of these reasons, the term "demonstrate" in § 5104(e)(2)(G) should be read as referring to the type of "demonstration" that would tend to disrupt the orderly business of Congress. Even if, however, this Court adopts a broader reading of "demonstrate" — or, like the district court, finds it unnecessary to resolve this interpretive issue[6] — Nassif's overbreadth

---

[6] Contrary to Nassif's assertion (Br. at 18) that the "district court rejected the government's construction of the statute," the district court neither adopted nor rejected this interpretation. Rather, the court expressly declined to resolve whether § 5104(e)(2)(G) "bars only disruptive conduct" (A67) because it determined that the statute was permissible under the

(continued . . . )

claim would fail because, as discussed infra, the statute is a viewpoint neutral, reasonable regulation in a nonpublic forum.

### 3. Section 5104(e)(2)(G) Is Permissible as a Viewpoint Neutral, Reasonable Regulation in a Nonpublic Forum.

Since § 5104(e)(2)(G) is confined to a specific government-controlled space (inside the Capitol Buildings), its permissible applications under the First Amendment are evaluated according to the "'forum based' approach for assessing restrictions that the government seeks to place on the use of its property." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678 (1992). That is because "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44 (1983). The Supreme Court has recognized three types of public property

---

First Amendment based upon either interpretation. Regardless, as Nassif agrees (Br. at 6), this Court's review of the issue is de novo.

for First Amendment purposes: (1) the traditional public forum, (2) the designated public forum, and (3) the nonpublic forum. *See id*. at 45–46.[7]

Traditional public forums are places that "by long tradition" have "been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry*, 460 U.S. at 45. These locations include "parks, streets, sidewalks, and the like." *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1885 (2018). In these forums, "the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Id*.

---

[7] Nassif appears to argue (Br. at 13–14) that the forum analysis should be conducted (if at all) only after a court assesses whether a challenged statute criminalizes a substantial amount of protected activity. As the district court explained, however, the forum analysis can inform the answer to that question because "a statute applied in a traditional public forum could be unconstitutional, but the same statute, as applied in a nonpublic forum, could pass constitutional muster" (A65). *See, e.g., Hill v. Colorado*, 530 U.S. 703, 725, 730 (2000) (denying overbreadth challenge after conducting forum analysis and determining the statute "is a valid time, place and manner regulation"). The case cited by Nassif, *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 573–74 (1987), does not suggest otherwise, as the Supreme Court simply determined a forum analysis was unnecessary where the statute would be overbroad in a public or nonpublic forum. *Id*.; *see also Virginia v. Hicks,* 539 U.S. 113, 118 (2003) (forum analysis unnecessary where challenged policy permissible in either public or nonpublic forum).

Designated public forums are spaces that have "not traditionally been regarded as a public forum" but which the government has "intentionally opened up for that purpose." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469–70 (2009). As long as the government maintains the public designation of a forum, "it is bound by the same standards as apply in a traditional public forum." *Perry*, 460 U.S. at 46.

In a nonpublic forum, on the other hand — a space that "is not by tradition or designation a forum for public communication" — the government has much more flexibility to craft rules limiting expression. *Perry*, 460 U.S. at 46. The government may reserve such a forum "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id*.

### a. The Capitol Buildings' Interiors Are a Nonpublic Forum.

As district court correctly found, the interiors of the Capitol Buildings are a nonpublic forum.[8]

---

[8] Nassif's claim (Br. at 5, 15–17, 19) that the district court "did not hold the government to its burden" in the forum analysis is unsupported by the cases upon which Nassif relies. As a general proposition, where a

(continued . . . )

Congress has not opened up its buildings, historically or otherwise, to free and unabridged public discussion of ideas and public matters. *See Bynum*, 93 F. Supp. 2d at 56; *cf. Widmar v. Vincent,* 454 U.S. 263, 267–68 (1981) (university facilities made generally available for student group meetings were designated public forums). To the contrary, it has been recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators." *Bynum*, 93 F. Supp. 2d at 55. For example, congressional committee hearing rooms are not "regularly designated or held open to the general public for engagement in town meeting-like assembly and debate."

---

statute restricts First Amendment expression, the government has the "burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000). The government did so here by filing a brief with arguments and authorities that the district court found largely persuasive. *See Greater New Orleans Broadcasting Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999) (government's "burden" requires "identifying a substantial interest and justifying the challenged restriction"). To the extent Nassif contends that some additional "burden" applies to a forum analysis, his reliance (Br. at 16) on *Lederman* is misplaced. *Lederman*, and the cases upon which it relied, required the government to demonstrate that a sidewalk — which is presumed to be a traditional public forum — was in fact a nonpublic forum because its use was "overwhelmingly specialized." 291 F.3d at 43. No such presumption applied here.

*Dubkin v. United States,* 119 Daily Wash. L. Rptr. 2213, 2218 (D.C. Super. Ct. 1991). "The normal purpose and function of the hearing room (the orderly and formal presentation of testimony in the form of debate and discussion by elected officials and authorized witnesses) suggests that this area is not a place, designated or otherwise, open to the public for limitless expressions." *Id.* The same is true for the Senate and House Galleries, *see United States v. Carey*, No. M-9066-96, slip op. (D.C. Super. Ct. Jan. 3, 1997), *aff'd sub nom. Smith-Caronia v. United States*, 714 A.2d 764 (D.C. 1998), the hallways in the Capitol, *see Markowitz v. United States*, 598 A.2d 398, 404 (D.C. 1991), and the interiors of the Senate and House Office Buildings, *see Tetaz v. District of Columbia*, 976 A.2d 907, 914 (D.C. 2009).

Furthermore, there is nothing to "evidence[] a clear intent" by Congress to create a designated public forum inside the Capitol Buildings. *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 797 (1985). The fact that the Capitol is open for some regulated public expression and observation does not render it a designated public forum. "The government does not create a public forum by inaction or by permitting limited discourse." *Id.*

The interiors of the Capitol Buildings are thus a nonpublic forum for First Amendment purposes, *see Bynum*, 93 F. Supp. 2d at 56, and Congress may restrict First Amendment activity therein so long as the restrictions are "viewpoint neutral" and "reasonable in light of the purpose served by the forum," *Cornelius*, 473 U.S. at 806. The regulation "need only be reasonable; it need not be the most reasonable or the only reasonable limitation" on expression, nor must it be narrowly tailored to serve a compelling governmental interest. *Id.* at 808–09. That standard is plainly satisfied with respect to § 5104(e)(2)(G) because the government has a "substantial" interest in "[p]reventing disruption of the orderly conduct of the legislature's business." *Tetaz*, 976 A.2d at 915 (internal quotation marks omitted). It may therefore regulate expressive conduct within the Capitol Buildings that could cause "potential interference with or disturbance of the activities of Congress." *Markowitz*, 598 A.2d at 408 n.15.

Nassif argues (Br. at 15–16) that because the D.C. Court of Appeals (DCCA) has described the Capitol Rotunda as a "unique situs for demonstration activity," *Berg v. United States*, 631 A.2d 394, 397–98 (D.C.

1993),[9] the Rotunda itself — if not the rest of the various Capitol Buildings' interiors — should be considered a public forum for First Amendment purposes. Even assuming arguendo that this is correct,[10] it would not demonstrate that § 5104(e)(2)(G) is constitutionally overbroad. First, as discussed infra, the statute does not run afoul of the First Amendment even under the standard applicable to a public forum. Second, even if there were First Amendment concerns about expressive conduct within the Rotunda, Nassif must show more than "some impermissible applications of [the] statute." *Vincent*, 466 U.S. at 800. He must demonstrate that the impermissible applications present a "lopsided ratio," *Hansen*, 143 S. Ct. at 1940, relative to the "legitimate sweep" of the statute, *Williams*, 553 U.S.

---

[9] Nassif (Br. at 16) also cites a government brief filed in the DCCA, which accurately quotes this phrase from one of that court's binding precedents.

[10] The phrase "unique situs for demonstration activity" in this context appears to originate in *Kroll v. United States*, 590 F. Supp. 1282, 1289 (D.D.C. 1983), which involved expressive activity on the steps outside the Capitol, not in the Rotunda. The "grounds surrounding the Capitol . . . historically have been the site of numerous demonstrations," in contrast with the interiors of the Capitol Buildings. *Bynum*, 93 F. Supp. 2d at 53. For this reason, Nassif's reliance on cases involving the Capitol Grounds — such as *Lederman* and *Jeanette Rankin Brigade* — is unavailing.

at 292. Given that § 5104(e)(2)(G) applies throughout "any of the Capitol Buildings," its reach would remain constitutional in most applications.[11]

### b. Even if the Interiors of the Capitol Buildings Were a Public Forum, § 5104(e)(2)(G) Would Be Constitutionally Sound.

Even if the interiors of "any of the Capitol Buildings" were assumed to be a public forum, § 5104(e)(2)(G) would not run afoul of the First Amendment because it is a reasonable time, place, and manner restriction narrowly tailored to serve the compelling government interest of "ensuring that the activities of Congress proceed without disruption," *Bynum*, 93 F. Supp. 2d at 56.

The provision is content-neutral and none of its restrictions are "unrelated to the ends that it was designed to serve." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 297 (1984). It does not, for example, prohibit all access to the Capitol Buildings by persons not having business there. Furthermore, the provision applies only within the Capitol Buildings, and thus protects those places where concern for the

---

[11] That some of the conduct underlying Nassif's convictions occurred in the Rotunda does not affect this analysis, as Nassif asserts only an overbreadth (not an as-applied) challenge to the statute.

orderly functioning of Congress is greatest. *See Boos v. Barry*, 485 U.S. 312, 313 (1998) (rejecting overbreadth challenge to D.C. restriction on congregating near foreign embassies because, among other reasons, it "merely regulates the place and manner of certain demonstrations, [and] is site specific to areas within 500 feet of embassies"). In addition, because it does not apply to the Capitol Grounds, where demonstrations are permitted with proper authorization, the statute leaves open ample alternative channels of communication. *See Clark*, 468 U.S. at 295. The statute thus satisfies the First Amendment, particularly given that even in a public forum, a regulation of the time, place, or manner of expression "need not be the least restrictive or least intrusive means" of achieving the end sought. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).

> ### 4. Section 5104(e)(2)(G) Is Not Substantially Overbroad Relative to Its Plainly Legitimate Sweep.

Under any of the statutory interpretations and forum frameworks discussed supra, Nassif has failed to satisfy the demanding standard for a facial overbreadth challenge based on the First Amendment. Nassif has not shown, as he must, that there is such a "lopsided" "ratio of unlawful-to-lawful applications" under § 5104(e)(2)(G), *Hansen*, 143 S. Ct. at 1940, that

the statute's "overbreadth [is] substantial . . . relative to [its] plainly legitimate sweep," *Williams*, 553 U.S. at 292.

Nassif's offense and those of the many other defendants prosecuted under § 5104(e)(2)(G) for their actions on January 6, 2021, are illustrative of the numerous constitutionally legitimate applications of the statute to conduct and speech unprotected by the First Amendment.[12] As the district court observed (A68), the statute has also been used to prosecute a defendant who protested Justice Kavanaugh's nomination hearings by standing on a chair, raising a large sign, and shouting at hearing committee members. *See United States v. Barry*, No. 18-mj-111, Doc. 28 (D.D.C. July 30, 2019). Furthermore, the DCCA has rejected many First Amendment challenges brought by defendants convicted under the D.C. companion statute, which likewise makes it unlawful to "willfully and knowingly . . . parade, demonstrate, or picket within any of

---

[12] Nassif takes issue with the government's description of him "trespassing" at the Capitol, arguing that trespass is not an element of § 5104(e)(2)(G) (Br. at 9–10, 17, 20). This response is inapposite. The point is not that all, or even most, violations of § 5104(e)(2)(G) will involve conduct identical to Nassif's, but that the statute has sufficient applications permissible under the First Amendment to defeat an overbreadth challenge.

the Capitol Buildings." D.C. Code § 10-503.16(b)(7).[13] *See, e.g., Grogan v. United States*, 271 A.3d 196, 212–14 (D.C. 2022) (rejecting overbreadth and as-applied challenges by defendant who preached loudly against abortion from a seat in the Senate Gallery); *Tetaz*, 976 A.2d at 914 (rejecting as-applied challenge where police prevented a group of 100 war protestors from marching into Senate Office Building); *Berg v. United States*, 631 A.2d 394, 399 (D.C. 1993) (rejecting as-applied challenge where group of more than 100 demonstrators dramatized a "die-in" in the Capitol Rotunda, including shooting noises and clothing spattered with red paint, to protest military aid to rebels in Nicaragua); *Markowitz*, 598 A.2d at 407 (rejecting as-applied challenge by defendant who unfurled a large banner in the corridor outside a door leading to the floor of the House of Representatives).

Nassif (Br. at 11–12) cites a single concrete counter-example based on *Bynum*, 93 F. Supp. 2d at 54, where Capitol Police, relying on a regulation interpreting § 5104(e)(2)(G), told a pastor leading a tour group that praying aloud (albeit quietly) was not permitted inside the Capitol. In a civil lawsuit

---

[13] This statute was previously codified at D.C. Code § 9-112(b)(7).

that followed, the court upheld the constitutionality of § 5104(e)(2)(G) but found that the Capitol Police regulation was overbroad. *See id.* at 60. While Nassif argues that a different, still-applicable Capitol Police regulation has similar problems (Br. at 9–10), he does not (and could not) challenge that regulation in this case, nor does he identify any examples of it being applied in a manner that violates the First Amendment.

Nassif instead speculates about members of Congress and their staffers being criminally charged for engaging in "organized conduct advocating for various viewpoints" (Br. at 14) or "debating in the Capitol Buildings" (Br. at 10). Nassif, however, overlooks, a statutory "[e]xemption of government officials," which provides that none of the provisions under § 5104(e) "prohibit any act performed in the lawful discharge of official duties" by any members of Congress or Congressional employees. 40 U.S.C. § 5104(e)(3). Nassif's other speculative hypotheticals — such as "lawmakers wearing red ribbons for AIDS awareness week" or "visitors bowing their heads in unison" (Br. at 7) — are inconsistent with a proper construction of § 5104(e)(2)(G), see pages 13–18, supra, and unsupported by any examples of arrest or prosecution. In any event, "the mere fact that one can conceive of some impermissible applications of a statute is not

sufficient to render it susceptible to an overbreadth challenge." *Vincent*, 466 U.S. at 800. In short, as the Supreme Court recently put it, "[t]his is not the stuff of overbreadth." *Hansen*, 143 S. Ct. at 1948.

### 5. Alternatively, if This Court Finds That § 5104(e)(2)(G) Is Overbroad, It Should Adopt a Narrowing Construction.

Although Nassif's overbreadth challenge should be denied for the reasons discussed supra, a narrowing construction would be a more appropriate remedy than invalidating § 5104(e)(2)(G) if the Court disagrees. "It is well settled that federal courts have the power to adopt narrowing constructions of federal legislation." *Boos*, 485 U.S. at 330–31. "Indeed, the federal courts have the duty to avoid constitutional difficulties by doing so if such a construction is fairly possible." *Id.* at 331.

A straightforward option would be the construction that *Bynum* found to be already applicable to the statutory language — i.e., that it applies only to "demonstrations" that "would disrupt the orderly business of Congress." *Bynum*, 93 F. Supp. 2d at 58. We note that this is the construction the government set forth in its Trial Brief below, *see United States v. Nassif*, No. 21-cr-421, Doc. 60 at 10 (D.D.C. Nov. 21, 2022), and has requested in jury instructions for other defendants charged under

this statute in connection with January 6, 2021, *see, e.g., United States v. (Jesus) Rivera*, No. 21-cr-60, Doc. 48 at 4 (D.D.C. May 27, 2022).

We note, alternatively, that the DCCA has adopted a so-called "tourist standard" to narrow the construction of the D.C. companion statute, D.C. Code § 10-503.16(b)(7), such that it applies "only [to] demonstrations that involve conduct more disturbing than the actions of a tourist would normally be, while taking into consideration the right of the people to freedom of expression." *Hasty v. United States*, 669 A.2d 127, 131 (D.C. 1995) (internal quotation marks omitted). While the government recognizes that the "tourist standard" is controlling law in the DCCA, our position in that court, consistent with our position here, is that "no limiting construction [should be] required." *See id.* at 131 n.4.

## C. Section 5104(e)(2)(G) Is Not Void for Unconstitutional Vagueness.

### 1. Standard of Review and Applicable Legal Principles

Whether a statute is unconstitutionally vague is reviewed de novo. *See United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017).

The "void for vagueness" doctrine derives from the Due Process Clause, and it prevents enforcement of a criminal statute that is "so vague

that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). A statute is not unconstitutionally vague, however, simply because its applicability is unclear at the margins, *see Williams*, 553 U.S. at 306, or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *see Skilling v. United States*, 561 U.S. 358, 403 (2010). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

"To provide fair notice, generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Bronstein*, 849 F.3d at 1107 (cleaned up). Indeed, "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Id.* (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975)). Furthermore, "[e]ven as the vagueness inquiry refers to a law's meaning to the 'ordinary

person,' a statutory term is not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere." *Id.* (cleaned up). "[W]e are not concerned with vagueness in the sense that the term requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask." *Id.* (internal quotation marks omitted). Rather, a statute is unconstitutionally vague only if, "applying the rules for interpreting legal texts, its meaning specifies no standard of conduct at all." *Id.* (cleaned up).

### 2.    Discussion

Nassif's claim (Br. at 19–22) that § 5104(e)(2)(G) must be struck as unconstitutionally vague should be rejected. Nassif has failed to overcome the "strong presumpti[on]" that the statute is constitutionally sound. *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32 (1963).

In *Bronstein*, this Court rejected a vagueness challenge to 40 U.S.C. § 6134, which makes it unlawful, among other things, to "make a harangue or oration, or utter loud, threatening, or abusive language in the Supreme Court Building or grounds." 849 F.3d at 1104. The defendant claimed the terms "harangue" and "oration" were so broad as to render the statute

unconstitutionally vague. *See id*. at 1106. After acknowledging that dictionary definitions for these terms could encompass "formal speeches" or "angry or vehement speeches," the Court emphasized that "[o]ur search here is not for every facet of 'harangue' or 'oration,' but their meaning within the statute at issue." *Id*. at 1108. Given the statute's locational limitation ("in the Supreme Court Building or grounds"), and the fact that the statutory "prohibitions surrounding" the terms in question "demonstrate[d] concern with disruptions of the Supreme Court's order and decorum," the Court concluded that "harangue" and "oration" "refer to public speeches that tend to disrupt the Court's operations, and no others." *Id*. at 1108–09. Accordingly, the Court held, the statutory terms "proscribe[d] determinable conduct" and were not unconstitutionally vague. *Id*. a 1104.

The same reasoning applies here, where § 5104(e)(2)(G) makes it unlawful "willfully and knowingly . . . [to] parade, demonstrate, or picket in any of the Capitol Buildings." As in § 6134, there is a locational limitation for § 5104(e)(2)(G), which applies only inside the Capitol Buildings. Furthermore, as in § 6134, the statutory terms surrounding the term "demonstrate" in § 5104(e)(2)(G) ("parade" and "picket"), as well as the conduct made unlawful in the immediately preceding provisions,

*see* §§ 5104(e)(2)(D)-(F), show that "demonstrate" is properly read as referring to the type of "demonstration" that would tend to disrupt the orderly business of Congress. *See Bynum*, 93 F. Supp. 2d at 58. As discussed supra, see pages 13–18, this interpretation is further supported by the heading of § 5104(e)(2) ("Violent entry and disorderly conduct") and the statute's legislative history.

Nassif's assertion (Br. at 21) that the government "has been haphazardly guessing as to the meaning of § 5104(e)(2)(G)" is incorrect and unsupported by the cases he cites. In each case Nassif identifies on page 21 of his brief, the government interpreted "demonstrate" in the same manner it did below in this case and reiterates now on appeal: as referring to the type of "demonstration" that would tend to disrupt the orderly business of Congress. *See United States v. Gray*, No. 21-cr-495, Doc. 62 at 19 (D.D.C. Nov. 3, 2022) (§ 5104(e)(2)(G) "prohibits an individual from engaging in disruptive conduct inside the Capitol building"); *United States v. Rhine*, No. 21-cr-687, Doc. 57 at 13 (D.D.C. Nov. 30, 2022) (same); *United States v. Munchel*, No. 21-cr-118, Doc. 193-1 at 43 (D.D.C. Mar. 27, 2023) (same); *United States v. Sheppard*, No. 21-cr-203, Doc. 46 at 47 (D.D.C. Nov. 15, 2022) (same). Indeed, in the two of these cases that proceeded to

jury trials, the government and defense both proposed jury instructions that defined the term "demonstrate" as referring to conduct "that would disrupt the orderly business of Congress." *Rhine*, No. 21-cr-687, Doc. 68-2 at 48–49 (D.D.C. Dec. 19, 2022); *Sheppard*, No. 21-cr-203, Doc. 68 at 33, Doc. 69 at 10 (D.D.C. Jan. 9, 2023).

Nassif's claim (Br. at 21–22) that the government adopted a different position in *United States v. Stenz*, No. 21-cr-456 (D.D.C.), is also unavailing. The excerpt quoted on page 22 of Nassif's brief is from the sentencing hearing in *Stenz*, after the defendant pleaded guilty to one count of violating § 5104(e)(2)(G). *See* No. 21-cr-456, Doc. 40 (D.D.C. Feb. 22, 2022). First, contrary to Nassif's suggestion, the "concern" the district court expressed at that hearing about "confusion among members of the public" had nothing to do with purported vagueness in the statute. Rather, the district court hypothesized that the government's policy decision to include less serious charges against defendants involved in the assault on the Capitol, including violations of § 5104(e)(2)(G), may have contributed to "confusion" among some in the public about whether "what happened on January 6th [was] legitimate political discourse." *Id.* at 17–18. Second, the government's agreement in *Stenz* that a violation of § 5104(e)(2)(G) does not require proof

that "there be any disruption to Congress" is consistent with its reading of the statute elsewhere, including here. Nassif conflates the issues of what type of conduct is prohibited by § 5104(e)(2)(G) with whether it is necessary, under the statute, to prove the conduct had a particular effect. In contrast to 18 U.S.C. § 1752(a)(2), which requires proof that a defendant's conduct "in fact" "impede[d] or disrupt[ed] the orderly conduct of Government business or official functions," § 5104(e)(2)(G) requires proof only that the defendant engaged in one of three specific types of conduct that, as the district court put it, "Congress reasonably could have concluded would disrupt its legislative process" (A68).

Finally, Nassif has not shown that purported "confusion as to the meaning of § 5104(e)(2)(G)" in district court decisions (Br. at 21) supports his unconstitutional vagueness claim. To the extent that some courts have adopted slight variations in their interpretations of the statute's terms, "a statutory term is not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere." *Bronstein*, 849 F.3d at 1107 (internal quotation marks omitted). Notably, in all four decisions cited by Nassif, the district courts agreed that § 5104(e)(2)(G), as a whole, applies to conduct that would tend to disrupt the orderly business

of Congress. *See Gray*, 2023 WL 2998862, at *13 (D.D.C. Jan. 26, 2023) (§ 5104(e)(2)(G) is "a reasonable restriction on certain conduct within Capitol buildings that Congress reasonably could have concluded would disrupt its legislative process") (internal quotation marks omitted);[14] *Rhine*, 2023 WL 372044, at *15 (D.D.C. Jan. 24, 2023) (statute applies to conduct "that could disrupt Congress from carrying out its business"); *Munchel*, 2023 WL 2992689, at *8 (D.D.C. Apr. 18, 2023) ("the statute reasonably bars a particular kind of disruptive behavior from undermining the purpose served by the Capitol Buildings"); *Sheppard*, 2022 WL 17978837, at *5 (D.D.C. Dec. 28, 2022) (statute "prevents actions 'that Congress reasonably could have concluded would disrupt its legislative process'"). So construed, as in *Bronstein*, the provision proscribes determinable conduct and is not unconstitutionally vague. *See Hill v. Colorado*, 530 U.S. 703, 733 (2000) (where "it is clear what the [law] as a whole prohibits," "speculation about

---

[14] Nassif (Br. at 21) misreads *Gray* when he describes it as "concluding" that a "demonstration" could involve "one individual." In the footnote cited by Nassif, the district court in *Gray* found it unnecessary to determine the extent to which a "demonstration" must be "organized" in order to violate the statute. 2023 WL 2998862, at *14 n.6. The court then speculated whether it would suffice if a person "spontaneous[ly]" elected to take part in "a public display *involving others*." *Id.* (emphasis added).

possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications") (internal quotation marks omitted).

## II. The District Court Properly Applied U.S.S.G. § 2A2.4 to Nassif's Conviction for Count Two.

Contrary to Nassif's second claim (Br. at 22–28), the district court properly applied U.S.S.G. § 2A2.4 to determine the base offense level for Count Two, Nassif's conviction for violating 18 U.S.C. § 1752(a)(2).

### A. Additional Background

Before sentencing, the parties disputed which U.S.S.G. provision should determine the base offense level for Nassif's conviction for disorderly and disruptive conduct in a restricted building under 18 U.S.C. § 1752(a)(2). The government, in agreement with the Presentence Investigation Report (PSR) (Sealed Appendix (SA) 9),[15] argued that the most appropriate guideline was U.S.S.G. § 2A2.4 (A316). This provision,

---

[15] Although, as Nassif notes (Br. at 24 n.5), the PSR incorrectly cited U.S.S.G. § 2X5.2 in its Guidelines analysis (SA9), this error was not addressed in Nassif's Sentencing Memorandum (A331–55), not discussed by any party at the sentencing hearing, and played no role in the district court's correct determination that U.S.S.G. § 2A2.4 applied to Nassif's conviction under 18 U.S.C. § 1752(a)(2) (A361–75).

titled "Obstructing or Impeding Officers," sets a base offense level of 10. *See* U.S.S.G. § 2A2.4(a). Nassif claimed that U.S.S.G. § 2B2.3, titled "Trespass," should apply, resulting in a base offense level of four (A332). *See* U.S.S.G. § 2B2.3(a). Nassif argued that § 2A2.4, which is found in a part of the Guidelines titled "Offenses Against the Person," applies only to statutes that expressly refer to "a crime against a person or a crime against a federal officer" (A334–35).

At the sentencing hearing on April 27, 2023, the district court found that § 2A2.4 was the most appropriate guideline because it more closely corresponded to the elements of a § 1752(a)(2) offense (A375).[16] The court rejected Nassif's argument that § 2A2.4 applies only to statutes that expressly describe the offense as being committed against a particular person. The court noted that one of the statutes identified in the Commentary of § 2A2.4 — 18 U.S.C. § 2237(a)(2)(A) — "prohibits

---

[16] Nassif (Br. at 26) errs by asserting that the district court improperly "relied on evidence in the record, *see* A:374–75, but did not focus as required on the offense conduct charged in the count of which Mr. Nassif was convicted." The district court made clear that to determine the most appropriate guideline, it would consider "the offense charge[d] . . . as opposed to [Nassif's] particular conduct" (A361). In the passage cited by Nassif, the district court described certain facts from this case only to illustrate "how [the court had] interpreted [§] 1752(a)(2)" (A374).

interfering with a process or an action, boarding a vessel, rather than interfering with a person" (A374). The court reasoned that § 2A2.4 must apply to § 2237(a)(2)(A) because "interference with . . . a vessel boarding[] necessarily would involve interfering with the person who's tasked with that boarding" (A374). Likewise, the court concluded, impeding or disrupting "the orderly conduct of government business" under § 1752(a)(2) "necessarily would involve interfering with the person who's tasked with that . . . government business" (*id.*).

Noting that its conclusion was consistent with all but one district court judge in this jurisdiction who had addressed this issue, the district court also explained why it "disagree[d]" with the sole contrary ruling upon which Nassif relied (A375). In *United States v. Brodnax*, No. 21-cr-350, Doc. 61 (D.D.C. Aug. 18, 2022), the district court determined that § 2A2.4 does not apply to § 1752(a)(2) by relying primarily on *United States v. Montanez*, 36 F.4th 824 (8th Cir. 2022). The district court here explained that the court's reliance in *Brodnax* was misplaced because *Montanez* omitted 18 U.S.C. § 2237(a)(2)(A) (interfering with boarding a vessel) from its analysis of the statutes referenced in the Commentary of § 2A2.4, and, furthermore, *Montanez* involved different issues than those presented here and did not

hold "that an offense's text has to explicitly refer to a law enforcement victim" in order for § 2A2.4 to apply (A373–74).

## B. Standard of Review and Legal Principles

This Court reviews "the soundness of the [district] court's [Sentencing] Guidelines interpretation" de novo. *United States v. Cooper*, 886 F.3d 146, 155 (D.C. Cir. 2018).

To determine the base offense level for a conviction under the Guidelines, the district court must "[r]efer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline." *United States v. McKeever*, 824 F.3d 1113, 1121 (D.C. Cir. 2016) (quoting U.S.S.G. § 1B1.2(a)). If more than one guideline is listed for a particular statute, the court should "use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. § 1B1.2 cmt. n.1; *accord* Appendix A, Introduction. Selection of the "most appropriate" provision is "based only on the statute (or offense) of conviction," rather than on evidence of the defendant's "actual conduct." *United States v. (George) Rivera*, 293 F.3d 584, 585 (2d Cir. 2002).

## C.    U.S.S.G. § 2A2.4 Applies to § 1752(a)(2).

According to the Statutory Index, the base offense level for a conviction under 18 U.S.C. § 1752 is determined by applying either U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) or § 2B2.3 (Trespass). *See* U.S.S.G., Appendix A. As the district court correctly determined, § 2A2.4 is the "most appropriate" provision for a violation of § 1752(a)(2), which criminalizes "engag[ing] in disorderly or disruptive conduct" that "in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2).

The language of § 2A2.4 supports this interpretation, as its title, "Obstructing or Impeding Officers," closely aligns with § 1752(a)(2)'s requirement that a defendant "in fact" "impede[d] or disrupt[ed] . . . Government business or official functions." Furthermore, the statutes referenced in § 2A2.4's Commentary are similar to § 1752(a)(2), in that they criminalize "imped[ing]," "interfer[ing] with," or "obstruct[ing]" official functions performed by government officers. *See* 18 U.S.C. §§ 111(a)(1) (applying to whoever forcibly "impedes" or "interferes with" a government officer or employee "engaged in or on account of the performance of official duties"); 1501 ("obstruct[ing]" "any officer of the United States" serving a

legal writ or process); 1502 ("obstruct[ing] an extradition agent of the United States in the execution of his duties"); 2237(a)(1) ("knowingly fail[ing] to obey an order by an authorized Federal law enforcement officer to heave to [a] vessel"); 2237(a)(2)(A) (forcibly "imped[ing]" or "interfer[ing] with" "a boarding or other law enforcement action" while on board a vessel); 3056(d) ("obstruct[ing]" or "interfer[ing] with" "a Federal law enforcement agent engaged in" certain "protective functions").

Although § 1752(a)(2), unlike some of the statutes listed above, does not use words such as "officer" or "agent" in its statutory text, a defendant who commits disorderly and disruptive conduct that "in fact" impedes or disrupts government business or official functions has necessarily obstructed or impeded the government officials who are conducting the business or functions in question. Section 2237(a)(2)(A), to which § 2A2.4 indisputably applies, has a similar construction, as it makes it unlawful to "forcibly resist, oppose, prevent, impede, intimidate, or interfere with a boarding or other law enforcement action authorized by any Federal law[.]" 18 U.S.C. § 2237(a)(2)(A). As the district court observed (A374), the statutory text of § 2237(a)(2)(A), like § 1752(a)(2), expressly refers only to interference with certain official functions ("a boarding or other law

enforcement action"), and not to any particular person or federal officer. Section 2A2.4 properly applies to both statutes, since interfering with the performance of such official functions invariably means impeding or interfering with the officials performing them.[17]

Nassif's attempt (Br. at 27) to distinguish § 2237(a)(2)(A) because, unlike § 1752(a)(2), it requires "forcible" conduct is unavailing. Nassif argues that he was not "charged with an offense against a person, *i.e.*, knowingly engaging in any act of physical violence against a person" because a defendant can violate § 1752(a)(2) by "disrupt[ing] official functions without forcible conduct or resistance against an individual" (Br. at 26–27). Section 2A2.4 makes clear, however, that an offense can constitute "Obstructing or Impeding Officers" within the meaning of that provision without requiring "violence," "forcible" conduct, or any physical contact at all. A "Special Offense Characteristic" under § 2A2.4(b)(1)

_____

[17] This interpretation is further supported by the Application Notes of § 2A2.4, which recommend an upward departure for offenses resulting in "*significant* disruption of governmental functions." U.S.S.G. § 2A2.4, cmt. n.3 (emphasis added). This use of language similar to § 1752(a)(2), which criminalizes knowingly and intentionally "imped[ing] or disrupt[ing]" "Government business or official functions," reinforces that government functions are performed by government officers, and that interfering with the former is necessarily accomplished by interfering with the latter.

provides for a three-level increase where an offense "involved physical contact," showing that physical contact of any kind (let alone "violent" or "forcible" contact) is not required for an offense to qualify for the base offense level under § 2A2.4.

Nassif's argument that § 2B2.3 (Trespass) is the most appropriate guideline for a § 1752(a)(2) offense should be rejected. As Nassif acknowledges (Br. at 25), the statutes referenced in the Commentary of § 2B2.3 criminalize mere "unauthorized invasions of property." For this reason, as the PSR (SA9) and district court (A375) correctly concluded, § 2B2.3 applies to Nassif's Count One conviction for violating § 1752(a)(1), which makes it unlawful to "knowingly enter or remain in any restricted building or grounds without lawful authority." Unlike § 1752(a)(2), neither § 1752(a)(1) nor the statutes referenced in § 2B2.3's Commentary require a defendant to have "in fact" "impede[d] or disrupt[ed] . . . Government business or official functions" — which, as discussed, necessarily involves obstructing or impeding government officials. For these reasons, § 2B2.3

does not capture the elements of a § 1752(a)(2) violation and is not the most appropriate guideline for that offense.[18]

## III. The District Court Did Not Unconstitutionally Penalize Nassif for Going to Trial.

Nassif's third claim (Br. at 28–31), that the district court improperly penalized him for exercising his right to trial, is foreclosed under this Court's precedent and disproved by the record.

### A. Additional Background

In calculating Nassif's Guidelines range at the sentencing hearing, the district court determined, consistent with the PSR, that Nassif had a total offense level of 12 and a criminal history category of I (A376; SA10). This included an upward adjustment to the offense level for "Obstruction of Justice" under U.S.S.G. § 3C1.1 based on Nassif's numerous instances

---

[18] Nassif (Br. at 27–28) cites *United States v. Marquez*, No. 21-cr-136 (D.D.C.), in which the government erroneously stipulated in a plea agreement that U.S.S.G. § 2B2.3 should be applied to a conviction under § 1752(a)(2). After recognizing the error, the government explained in its sentencing memorandum that "[u]pon further review of the applicable law," the government concluded that § 2A2.4, not § 2B2.3, properly applies to violations of § 1752(a)(2). *Marquez*, No. 21-cr-136, Doc. 28 at 18 n.6 (Dec. 2, 2021). But in light of its earlier concession in the plea agreement, the government did not ultimately object to the application of § 2B2.3 at sentencing in *Marquez*. *Id.*

of "false testimony that had a material effect on the proceeding" (A375–76; SA8–9).[19] Nassif's counsel conceded there was no basis to seek a downward adjustment for "Acceptance of Responsibility" under § 3E1.1 (A368), and the court agreed (A376; SA8). The court accordingly determined Nassif's sentencing range to be 10–16 months of incarceration (A376; SA16). Since the statutory maximum for Nassif's most serious offenses was 12 months, however, his actual Guidelines range was 10–12 months (*id.*).

Nassif argued for either a probationary sentence or a minimal term of incarceration to avoid what he characterized as unwarranted sentencing disparities with other defendants who purportedly engaged in similar conduct on January 6, 2021 (A340–47; A359; A381–86). The court noted that Nassif's examples consisted primarily of defendants who "pled and accepted responsibility," and who did not "get on the stand and misrepresent facts of what happened on January 6th" (A380–81). The court questioned why those cases were not "fundamentally different," since Nassif had testified falsely and neither "accepted responsibility" nor "shown remorse" for his offenses (A382). Nassif's counsel noted that obstruction of

---

[19] See also pages 4–5, supra, summarizing the district court's findings with respect to Nassif's false testimony at trial.

justice and acceptance of responsibility are "taken into account" by adjustments in the Guidelines, and added, "But I also think you cannot penalize someone for going to trial" (A382–83). The court responded, "Well, they are penalized for going to trial in terms of the acceptance of responsibility" (A383). Nassif's counsel agreed, saying, "Exactly" (*id*.). Nassif's counsel then reiterated his position that "to the extent there might be an obstruction enhancement, it's already recognized within the guideline," and that a court should not "require a super acceptance [of responsibility] where someone goes to trial" (*id*.).

Nassif's counsel later argued that the court should take a "bird's-eye view" of the case and consider that Nassif's offenses consisted of only "10 minutes of someone's life" (A386). The district court responded:

> Yeah. I mean, when you boil it down — and both sides need to realize this. We're basically dealing with a situation of an individual who was in the Capitol for 10 minutes, who didn't engage himself in violent or property-destructive activity but who did lead a chant, encourage others to participate in the riot and to come into the Capitol, and to keep on fighting. I've made those findings with respect to Mr. Nassif. And an individual who went to trial, who testified falsely, the Court has found, and who has shown not only no acceptance of responsibility but no remorse. That's what we have. (A387.)

Nassif's counsel made no objection to these remarks (*id*).

The district court ultimately determined that an aggregate sentence of seven months' incarceration was "the appropriate sentence here" (A393). This represented a downward variance below the Guidelines range of 10–12 months (*id*.). The court explained that a variance was warranted because Nassif's conduct on January 6th involved "no showing of aggressiveness or violence" (*id*.).

With respect to Nassif's disparity claim from earlier in the hearing, the district court stated that its sentence would "avoid any unwarranted sentence disparities" (A394). The court elaborated:

> I've reviewed a lot of other cases, including the chart that the defense provided. Most of those cases are guilty pleas and, therefore, do not involve a situation like this where there's no acceptance of responsibility, no remorse, and the defendant having gone to trial and testified, in my view, inaccurately or falsely. (*Id*.)

Nassif's counsel also made no objection to these remarks (*id*).

## B.    Standard of Review and Legal Principles

A preserved challenge to the substantive reasonableness of the trial court's sentence is reviewed for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 54–56 (2007). This standard is "quite deferential," *United States v. Knight*, 824 F.3d 1105, 1110–11 (D.C. Cir. 2016), and this Court "presume[s] a sentence within the range recommended by the

50

Guidelines is not excessive," *United States v. Law*, 806 F.3d 1103, 1106 (D.C. Cir. 2015). This deferential standard applies even where a defendant claims that disparities with the sentences of defendants who pleaded guilty infringes on due process or the Sixth Amendment right to trial by jury. *See United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 208 (D.C. Cir. 2013); *United States v. Otunyo*, 63 F.4th 948, 949–50 (D.C. Cir. 2023).

However, where a defendant claims that a district court's statements show that the court considered a constitutionally impermissible factor at sentencing, but no objection was raised to those statements below, the claim is reviewed only for plain error. *See United States v. Lawrence*, 662 F.3d 551, 561–62 (D.C. Cir. 2011). "A court reverses for plain error where the appellant demonstrates there is (1) a legal error that (2) is plain at the time of appellate review, (3) affects substantial rights of the parties, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gewin*, 759 F.3d 72, 78–79 (D.C. Cir. 2014).[20]

---

[20] Nassif thus errs by broadly asserting (Br. at 28) that "constitutional challenges are reviewed *de novo*." *See, e.g., United States v. Barnes*, 295 F.3d 1354, 1366–67 (D.C. Cir. 2002) (reviewing due-process argument not raised in district court for plain error).

### C. Nassif's Claim That the District Court Improperly Penalized Him for Exercising His Right to Trial Is Foreclosed by Precedent and Disproved by the Record.

Nassif fails to show plain error at sentencing. Nassif's only claim below relating to a purported "penalty" for exercising his right to trial was in support of his argument about unwarranted sentencing disparities compared with defendants who pleaded guilty in connection with their conduct on January 6, 2021 (A340–47; A359; A381–86). When the district court correctly noted that persons who go to trial do not typically receive a Guidelines reduction for acceptance of responsibility (A383), Nassif did not claim this amounted to an unconstitutional penalty. Nor did Nassif suggest below that any other aspect of the district court's sentencing amounted to an unconstitutional punishment for going to trial. Accordingly, Nassif's current claim is reviewable only for plain error.

In any event, Nassif fails to show any error, plain or otherwise. In *United States v. Jones*, 997 F.2d 1475 (D.C. Cir. 1993) (en banc), the district court gave the defendant a Guidelines reduction for acceptance of responsibility under U.S.S.G § 3E1.1. *See id.* at 1476. At sentencing, however, the district court indicated the defendant would not receive "the full benefit" of this reduction because he had accepted responsibility only

after trial. *Id*. The district court further explained that if the defendant had pleaded guilty, it would have issued a sentence at the bottom of the new Guidelines range, six months below the sentence it ultimately issued. *See id*. at 1477. On appeal, the en banc Court rejected the defendant's claim that the district court impermissibly penalized him for exercising his right to trial. *See id*. at 1477–80. Noting that the defendant's sentence remained below the presumptive Guidelines range that would have applied absent any benefit for acceptance of responsibility, the Court found that the district court had not "enhanc[ed] [the defendant's] punishment," but merely "give[n] [him] less of a benefit than [the court] would have allowed an otherwise identical defendant who showed greater acceptance of responsibility by acknowledging his guilt at an earlier stage." *Id*. at 1477. The Court found that such a distinction was constitutionally permissible. *See id*. at 1478. As the Court explained, "[t]he whole notion of showing leniency to some deserving defendants — that is, of treating them more mildly than others — requires withholding leniency from others who appear less deserving." *Id*. *See also Corbitt v. New Jersey*, 439 U.S. 212, 223 (1978) ("[I]t is not forbidden to extend a proper degree of leniency in return for guilty pleas.").

Nassif's claim that his right to go to trial was infringed by an unwarranted sentencing disparity compared with defendants who pleaded guilty is foreclosed by *Jones*.[21] The district court correctly explained that defendants who pleaded guilty were "fundamentally different" than Nassif, who failed to accept responsibility, had never shown remorse, and testified falsely at his trial (A382). *See Lopesierra-Gutierrez*, 708 F.3d at 208 ("That some defendants pled guilty while others did not provides a perfectly valid basis for a sentencing disparity, and such disparity imposed no impermissible burden on [the defendant's] jury-trial right.") (citation omitted). Furthermore, as in *Jones*, the sentence that the district court ultimately issued for Nassif was below the presumptive Guidelines range applicable to his convictions (A393). Nassif thus was not impermissibly penalized for going to trial, but merely received "less of a benefit" than he would have received for pleading guilty. *Jones*, 997 F.2d 1477. *See also Otunyo*, 63 F.4th at 960 ("The best way to curtail unwarranted disparities

---

[21] While Nassif acknowledges *Jones* in his brief, he cites and quotes only from two of the dissenting opinions (Br. at 29–31), rather than from the en banc majority opinion.

is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly.") (internal quotation marks omitted).

To the extent Nassif now claims (Br. at 28) that certain statements at the sentencing hearing showed the district court "expressly penalized" him for exercising his right to trial, this claim, too, is unavailing. As noted, Nassif did not object to any of these statements at the sentencing hearing, so this aspect of his appellate claim, too, is reviewed only for plain error. *See Lawrence*, 662 F.3d at 561–62. The claim would fail under any standard of review, however, because Nassif's assertion of an "explicit trial penalty" (Br. at 29) is disproved by the record.

The district court's statement that defendants "are penalized for going to trial in terms of the acceptance of responsibility" (A383) does not show the court relied on an impermissible sentencing consideration. While the district court's use of the word "penalty" was arguably inconsistent with this Court's terminology in *Jones*, context shows that the district court was making the uncontroversial point that a defendant who goes to trial typically does not receive a downward adjustment for acceptance of responsibility under the Guidelines. *See* U.S.S.G. § 3E1.1, cmt. n.2 ("This adjustment is not intended to apply to a defendant who puts the

government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."). That is plainly how Nassif's trial counsel interpreted the statement, since he responded, "Exactly" (A383), and elsewhere conceded there was no basis for Nassif to seek an adjustment on this basis (A368).

Nassif identifies (Br. at 3, 29) two other examples from the sentencing hearing when the district court purportedly "emphasized" that it relied on Nassif's exercise of his right to trial to increase his sentence (A387, A394). Neither example is supported by the record. The district court described Nassif as "an individual who went to trial, *who testified falsely*" and later referred to him "having gone to trial *and testified, in my view, inaccurately or falsely*" (A387, A394) (emphasis added). In both cases, the district court's statements are most reasonably interpreted as identifying Nassif's false testimony at trial — an issue that the district court discussed at length (A375–76) — as a factor that weighed against him at sentencing. In addition, even if these fleeting references to Nassif "having gone to trial" indicate, as Nassif argues, that the court somehow "considered" that fact in connection with sentencing, they should be read as referring only to Nassif's claim about sentencing disparities, which the court properly rejected. As

noted, that was the only context in which Nassif raised any claim in the district court about being "penalized" for exercising his right to trial.[22]

---

[22] The district court's statements here are readily distinguishable from the cases Nassif relies upon (Br. at 29–30), where appellate courts found a trial court's statements warranted remand for resentencing. *See, e.g., United States v. Crocker*, 788 F.2d 802, 808 (1st Cir. 1986) (court told defendant during trial, "I think imposing upon the time and resources of the Court to try a case which should not be tried is an imposition which deserves consideration when it comes time for me to sentence and I will do so."); *United States v. Hutchings*, 757 F.2d 11, 13–14 (2d Cir. 1985) (court said after the verdict that the trial was a "total waste of public funds and resources" because defendant "was clearly and unquestionably guilty," and indicated an intent to "consider that in sentencing").

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
JOHN P. MANNARINO
BRIAN MORGAN
ELIZABETH NASH ERIKSEN
Assistant United States Attorneys

/s/
TIMOTHY R. CAHILL
D.C. Bar #1032630
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Timothy.Cahill@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 12,041 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
TIMOTHY R. CAHILL
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Melissa Fussell, Assistant Federal Defender, Melissa_Fussell@fd.org, on this 8th day of August 2023.

/s/
TIMOTHY R. CAHILL
Assistant United States Attorney