IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 23-3069

---

D.D.C. Docket No. 1:21-cr-00421-JDB-1

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN MARON NASSIF,

    Defendant-Appellant.

---

## DEFENDANT-APPELLANT NASSIF'S OPPOSED MOTION FOR EXPEDITED REVIEW AND SUPPORTING MEMORANDUM OF LAW AND FACT

The Defendant-Appellant, JOHN MARON NASSIF, respectfully moves the Court, under Federal Rule of Appellate Procedure 31(a)(2) and Circuit Rule 47.2(b), to expedite review in this case. Mr. Nassif presents substantial challenges, discussed below in a memorandum of law and fact, to his convictions and 7-month prison sentence. There are strong and compelling reasons to expedite review, because Mr. Nassif's ability to receive meaningful relief from the judgment below would be

1

irreparably harmed if his appeal were not decided before he has served all, or substantially all, of the sentence for his convictions.

Accordingly, Mr. Nassif moves the Court to order expedited briefing, hearing, and consideration. Specifically, he asks the Court to shorten the time to serve and file briefs as follows:

- Mr. Nassif must serve and file a brief within 21 days after the date the court grants the instant motion;

- the United States must serve and file a brief within 14 days after Mr. Nassif's brief is served and filed; and

- Mr. Nassif's counsel may serve and file a reply brief within 14 days after service and filing of the government's brief but at least 7 days before oral argument.

Mr. Nassif further asks that the Court schedule oral argument for a hearing at the earliest opportunity after briefing is complete, and to expedite a decision after the case is submitted. Below, he summarizes the facts and legal arguments that show why expedited review is warranted. The government has advised the undersigned that it opposes this motion.

## I.  Summary of the Proceedings Below

Mr. Nassif was charged by information with four misdemeanor counts based on his actions on January 6, 2021, at the United States Capitol: entering or remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1) (Count One); disorderly or disruptive conduct in a restricted building, in violation of § 1752(a)(2) (Count Two); disorderly or disruptive conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and parading, demonstrating, or picketing in a Capitol Building, in violation of § 5104(e)(2)(G) (Count Four). He moved to dismiss Count Four, arguing that it failed to state an offense, that § 5104(e)(2)(G) violates the First Amendment, that § 5104(e)(2)(G) is substantially overbroad, and that § 5104(e)(2)(G) is unconstitutionally vague. Doc. 30. The district court denied the motion to dismiss. In its memorandum opinion, the district court noted that the "operative verbs—parade, demonstrate, and picket—cover <u>expressive</u> conduct." Doc. 42 at 5 n. 4 (emphasis in original). However, it declined to decide whether the statute is limited to disruptive conduct, as the government argued. *Id.* at 8.

3

Ultimately, the case proceeded to a bench trial. After the government rested at trial, defense counsel moved for a judgment of acquittal on all four counts and renewed the motion to dismiss Count Four of the information. Doc. 69 at 4. The district court denied Mr. Nassif's motion for judgment of acquittal. Doc. 70 at 4. Mr. Nassif was found guilty of all four counts. At sentencing, the district court made clear it was penalizing Mr. Nassif for exercising his constitutional right to go to trial. Sent. Tr. at 55, 63, 77. And, over Mr. Nassif's objection, the district court applied U.S.S.G. § 2A2.4, dealing with obstructing or impeding officers, to Count Two (prohibiting disorderly and disruptive conduct in a restricted area), which did not relate to obstructing or impeding an officer. The district court sentenced Mr. Nassif to 7 months in prison, with 12 months' supervised release to follow. Sent. Tr. at 78.

## II.   Statement of the Facts

On January 6, 2021, a joint session of the United States Congress convened at the US Capitol in order to certify the 2020 Presidential Election votes. The joint session began at approximately 1:00 p.m. By approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence

4

was present and presiding, first in the joint session, and then in the Senate chamber. As the proceedings continued, a large crowd gathered outside the US Capitol. At approximately 2:00 p.m., some individuals in the crowd forced their way past barricades and US Capitol Police officers. They made their way to the exterior façade of the building, and shortly after 2:00 p.m., they entered the Capitol Building. At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, evacuated the chambers, effectively suspending the proceedings.

At approximately 3:01 p.m., Mr. Nassif entered the restricted area outside the East Front of the United States Capitol. Doc. 78 at 6. He walked to the top of the stairs in front of the Rotunda door, where, at 3:09 p.m., he stood at the front of a crowd that was trying to get inside the door into the United States Capitol building. *Id.* At 3:14 p.m., Mr. Nassif entered the building, surrounded by a densely packed crowd of people. *Id.* At 3:18 p.m., Mr. Nassif entered the Rotunda. *Id.* at 7. Mr. Nassif never went farther than the foyer and entrance area of the Capitol's Rotunda. He exited the building via the East Rotunda doors at approximately 3:23 p.m. *Id.*

5

### III. Memorandum of Law

#### A. Mr. Nassif presents a substantial and meritorious argument that Section 5104(e)(2)(G) is unconstitutional on its face.

Section 5104(e)(2)(G), which states that "An individual or group of individuals may not willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings," is both overbroad and unconstitutionally vague in violation of the First Amendment. The district court's interpretation of the statute—that it reaches all organized conduct advocating a viewpoint in the Capitol Building— highlights its extraordinary breadth and vague language. Mr. Nassif presents a substantial and meritorious argument that § 5104(e)(2)(G) is facially unconstitutional.

#### 1. Section 5104(e)(2)(G) is overbroad.

Section 5104(e)(2)G flatly prohibits all parading, demonstrating, and picketing in a Capitol Building. In the First Amendment context, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State*

*Republican Party*, 552 U.S. 442, 449, n. 6 (2008)). In conducting an overbreadth analysis, a court must first construe the statute. *United States v. Williams*, 553 U.S. 285, 293 (2008). The next step is to ask whether the statute, properly construed, "criminalizes a substantial amount of protected expressive activity." *Id.* at 297; *United States v. Montgomery*, No. CR 21-46 (RDM), 2021 WL 6134591, at *23 (D.D.C. Dec. 28, 2021).

As for the first step of the analysis, the district court interpreted the statute to reach "organized conduct advocating a viewpoint." Doc. 42 at 13 n. 9. If anything, that interpretation broadens, rather than narrows, the statute—that sweep would include virtually all activity that occurs in the Capitol Building on a day-to-day basis while Congress is in session, with the exception of administrative, janitorial, or security-related tasks. The entire business of Congress is organized conduct advocating for various viewpoints, and crucially, the statute does not limit itself to those who have no right to be in the Capitol Building. A group of congressional staffers applauding and cheering for the Capitol Police would undoubtedly meet the district court's definition.

7

The district court did not complete the second step of the overbreadth analysis, instead reasoning that, under the First Amendment forum analysis, it did not need to determine whether the statute was limited to disruptive conduct. Doc. 42 at 8. However, the overbreadth analysis is an independent framework. *Cf. Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 573–74 (1987) ("Because we conclude that the resolution is facially unconstitutional under the First Amendment overbreadth doctrine regardless of the proper standard, we need not decide whether LAX is indeed a public forum, or whether the *Perry* standard is applicable when access to a nonpublic forum is not restricted."). "Much nondisruptive speech—such as the wearing of a T-shirt or button that contains a political message . . . is still protected speech even in a nonpublic forum." *Jews for Jesus, Inc.*, 482 U.S. at 576.

Although the district court employed the forum analysis, it did not hold the government to its burden under that analysis, as required by binding precedent. *Cf. Lederman v. United States*, 291 F.3d 36, 43 (D.C. Cir. 2002) (noting that the government "failed to meet its 'burden ... to show'" that the sidewalk around the Capitol Building was a nonpublic

forum). The government did not analyze the nature of the forum, nor did it cite any binding precedent that categorized the Capitol Building as a nonpublic forum.

Even assuming the government had met its burden of showing that the entire Capitol Building was a nonpublic forum, the government still should have been required to show that the statute's total prohibition on "organized conduct advocating a viewpoint," Doc. 42 at 13 n.9, was "reasonable in light of the purpose served by the forum." *Minnesota Voters All. v. Mansky*, 201 L. Ed. 2d 201, 138 S. Ct. 1876, 1886 (2018). Here, however, "[t]he Government ma[de] no effort to defend such a broad ban as constitutional." *Stevens*, 559 U.S. at 473. On the contrary, it argued that the ban was much narrower, reaching only disruptive conduct. Doc. 34 at 11. Further, it claimed that the statute was not aimed at speech, and that mere physical trespass would meet the elements. *Id.* at 5-6. Indeed, its argued construction is fundamentally inconsistent with the district court's ultimate construction of the statute. As such, it could not have possibly met its burden of showing such a broad ban was reasonable.

9

Ultimately, the district court both rejected the government's construction of the statute and held that the reasonableness prong of the forum test was met. Doc. 42 at 5 n.4, 8, 11. The purpose, according to the district court, was "ensuring that the activities of Congress proceed without disruption." *Id.* at 8. However, § 5104(e)(2)(D) already penalizes disruptive conduct in a Capitol Building. "The coexistence of [§ 5104(e)(2)(G)] with these prohibitions can, in reason, only imply that Congress must be taken, by the language it has used, to intend to prohibit absolutely assemblages which do not violate any of the more specific provisions. That purpose the Constitution does not countenance." *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 588 (D.D.C.), *aff'd*, 409 U.S. 972, 93 S. Ct. 311, 34 L. Ed. 2d 236 (1972).

If the statute does not limit itself to disruptive conduct, it is not reasonably related to the goal of preventing disruption. As this Court and other circuits have held, "'reasonableness' requires something more than the toothless 'rational basis' test used to review the typical exercise of a state's police power." *Price v. Garland*, 45 F.4th 1059, 1072 (D.C. Cir. 2022), *cert. denied*, No. 22-665, 2023 WL 3158363 (U.S. May 1, 2023). Furthermore, "in our system, undifferentiated fear or apprehension of

10

disturbance is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969). Simply put, "the problem here is that certain types of speech (parading, picketing, leafleting, vigils, sit-ins, and speechmaking) are, even under a narrow reading, almost entirely prohibited." *Lederman v. United States*, 291 F.3d 36, 45 (D.C. Cir. 2002). Mr. Nassif presents a substantial and meritorious argument that § 5104(e)(2)(G) is overbroad in violation of the First Amendment.

### 2. Section 5104(e)(2)(G) is unconstitutionally vague.

Mr. Nassif also presents a substantial and meritorious argument § 5104(e)(2)(G) is unconstitutionally vague. A statute with terms "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). "A law is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, if it fails to provide explicit standards to those who enforce it, or if it operates to inhibit the free exercise of First Amendment freedoms by chilling such

11

exercise by its uncertain meaning." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 59 (D.D.C. 2000).

The proceedings below contain a variety of guesses as to what § 5104(e)(2)(G) means, which is unsurprising given the absence of statutory definitions for 'parading,' 'picketing,' or 'demonstrating.' *Cf. Thornhill v. State of Alabama*, 310 U.S. 88, 100–01 (1940) ("The vague contours of the term 'picket' are nowhere delineated."). The government contended that § 5104(e)(2)(G) is not vague because, "in short," parading, picketing, and demonstrating means "engag[ing] in disruptive conduct." Doc. 34 at 11. The government even argued that trespassing in a Capitol Building after other people have trespassed and assaulted officers is *itself* demonstrating within the meaning of the statute. *Id.* at 6. The government's argued interpretation is unsupported by the text of § 5104(e)(2)(G), and its conflict with the district court's interpretation highlights the vague contours of the language. Moreover, if the district court is right and demonstrating means "mak[ing] a public display of sentiment for or against a person or cause," Doc. 42 at 12, it is difficult to overstate the chilling effect such a vague definition could have on First Amendment exercise in the Capitol Buildings.

12

### B. Mr. Nassif presents a substantial and meritorious argument that the district court unconstitutionally penalized Mr. Nassif for exercising his Sixth Amendment right to trial.

Mr. Nassif presents a substantial and meritorious argument that the district court's explicit penalization of Mr. Nassif for exercising his Sixth Amendment right to trial was unconstitutional. After the district court expressed skepticism that it should consider the need to avoid an unwarranted sentencing disparity between cases involving guilty pleas and Mr. Nassif's case, trial counsel for Mr. Nassif argued that Mr. Nassif should not be penalized for going to trial. Sent. Tr. at 54-55. The district court replied that defendants *are* penalized for going to trial. *Id.* Counsel then contended that the fact that Mr. Nassif went to trial was already accounted for in the sentencing analysis through the denial of an acceptance of responsibility reduction and through the obstruction of justice enhancement. The district court later emphasized that it considered the fact that Mr. Nassif had gone to trial in addition to the lack of acceptance of responsibility. Sent. Tr. at 63.

The district court's explicit trial penalty was impermissible and must be remedied. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."

13

*Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Although the D.C. Circuit has left "dangling the important question as to whether a trial judge can lay on extra time for going to trial," the other "circuits have unanimously acknowledged [that] when a judge increases a defendant's sentence specifically because he pleaded [not] guilty, the constitutional concerns are serious." *United States v. Jones*, 997 F.2d 1475, 1481, 1482 (D.C. Cir. 1993) (Mikva, J., dissenting); *see also United States v. Monroe*, 943 F.2d 1007, 1018 (9th Cir. 1991), *cert. denied*, 503 U.S. 971 (1992) ("[W]here a disparity in sentences suggests that a defendant who pleaded not guilty was being penalized for exercising his constitutional right to a trial, the reasons for the disparity must appear in the record."); *United States v. Frost*, 914 F.2d 756, 774 (6th Cir.1990) ("[I]t is improper for a district judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt."); *United States v. Crocker*, 788 F.2d 802, 809 & n. 3 (1st Cir.1986) ("The judge's remarks on how the presentation of a frivolous case and the ensuing waste of judicial resources could be factors in determining the sentence to be imposed are sufficient to establish that there was a reasonable likelihood of vindictiveness."); *United States v.*

14

*Hutchings*, 757 F.2d 11, 14 (2d Cir. 1985), *cert. denied*, 472 U.S. 1031 (1985) ("The '[a]ugmentation of sentence' based on a defendant's decision to 'stand on [his] right to put the Government to its proof rather than plead guilty' is clearly improper." (*quoting United States v. Araujo*, 539 F.2d 287, 291-92 (2nd Cir.1976))); *United States v. Roe*, 670 F.2d 956, 973 (11th Cir.1982), *cert. denied* 459 U.S. 856, 103 S. Ct. 126, 74 L.Ed.2d 109 (1982) ("[T]he sentencing court may not present the defendant with a choice between admitting his guilt and enduring a harsher sentence for failing to do so."); *United States v. Wright*, 533 F.2d 214, 216 (5th Cir.1976) ("a trial court may not pressure defendants, who have been found guilty following a trial by jury, to confess their guilt prior to the imposition of sentence"); *Hess v. United States*, 496 F.2d 936, 938 (8th Cir.1974) ("This circuit has joined a host of other courts in recognizing that whether a defendant exercises his right to trial by jury to determine his guilt or innocence must have no bearing on the sentence imposed.").

Moreover, "section 3E1.1 does not allow the judge to weigh against the defendant the defendant's exercise of constitutional or statutory rights. The exercise of these rights may diminish the defendant's chances of being granted the two-level reduction, not because it is weighed

15

against him but because it is likely that there is less evidence of acceptance to weigh in his favor. The sentencing court, however, may not weigh the exercise of these rights against the defendant." *United States v. Rodriguez,* 959 F.2d 193, 197 (11th Cir. 1992). Indeed, "[t]he Guidelines express in several places and in their overarching policy, an intention that sentencing courts not weigh against a defendant the fact that he has exercised the constitutional right to a trial. This must be as true in establishing the appropriate sentence within the applicable Guidelines range as it is in determining eligibility for an acceptance of responsibility adjustment." *Jones,* 997 F.2d at 1488 (Mikva, J., dissenting). Here, the district court's language "looks much more like the 'unilateral imposition of a penalty upon a defendant who has chosen to exercise a legal right' that the *Bordenkircher* Court explicitly rejected as unconstitutional." *Jones,* 997 F.2d at 1482 (Mikva, J., dissenting) (quoting *Bordenkircher*, 434 U.S. at 362).

### C. Mr. Nassif presents a substantial and meritorious argument that the district court incorrectly applied the 2A2.4 guideline to Count Two.

At Mr. Nassif's sentencing, the district court applied U.S.S.G. § 2A2.4, dealing with obstructing or impeding officers, to Count Two,

16

which charged a violation of 18 U.S.C. § 1752(a)(2), prohibiting disorderly and disruptive conduct in a restricted area. The language of Count Two, to which the district court was limited, says nothing about a crime against a person or a crime against a federal officer. Instead, Count Two describes misconduct on Federal property. It is an offense designed to allow for the smooth operation of government business at the Capitol. Section 2B2.3 is therefore the "most appropriate" guideline under § 2B2.3 cmt. n.1, and so is the applicable guideline for this offense. The language of 18 U.S.C. §1752(a)(2) shows that the offense is more analogous to a trespass rather than direct interference with an officer performing official duties. Had the district court applied § 2B2.3, Mr. Nassif's total offense level likely would have been 6 instead of 12, resulting in a lower guidelines range of 0-6 months.

District courts in the District of Columbia have reached two different conclusions as to whether a violation of § 1752(a)(2) should be properly scored according to § 2B2.3 or § 2A2.4. In the instant case, Judge Bates decided § 2A2.4 was the correct guideline. However, in *United States v. Brodnax*, Judge Friedman held that § 2B2.3 was the correct guideline. Sent. Tr. at 26. Notably, the government apparently

17

decided not to challenge Judge Friedman's ruling in *Brodnax*. *See United States v. Brodnax*, Case No. 1:21-cr-00350. Additionally, in *United States v. Marquez*, Case No: 1:21-cr-136, the government agreed in a plea agreement that a § 1752(a)(2) violation was properly scored under § 2B2.3. *See* Case No: 1:21-cr-136, Doc. 21 at 2-3. The decisions of the District of Columbia district judges are split on this issue, and even the government has adopted different positions in different cases. Accordingly, Mr. Nassif's contention that the district court incorrectly applied 2A2.4 rather than 2B2.3 is a substantial and meritorious issue.

## CONCLUSION

Whether § 5104(e)(2)(G) is facially unconstitutional, whether the district court unconstitutionally penalized Mr. Nassif for going to trial, and whether the district court improperly scored Mr. Nassif's guidelines under § 2A2.4 are all substantial and meritorious questions that deserve serious review. However, although Mr. Nassif's sentence is long considering his conduct, he began serving the sentence on June 13, 2023, and it is not long enough to allow him to receive meaningful relief on appeal unless the case is expedited. He therefore asks this Court to

expedite briefing, hearing, and consideration as proposed above, *see supra* p. 2, or as the Court otherwise deems appropriate.

        Respectfully submitted,

        A. Fitzgerald Hall, Esq.
        Federal Defender

        ***/s/ Melissa Fussell***
        Melissa Fussell, Esq.
        Assistant Federal Defender
        Office of the Federal Defender
        Middle District of Florida
        201 S. Orange Avenue, Suite 300
        Orlando, Florida 32801
        Telephone: 407-648-6338
        E-Mail: Melissa_Fussell@fd.org

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Counsel for John Maron Nassif certifies that this motion complies with the length limitations set forth in Fed. R. App. P. 27(d)(2). The motion contains 3,728 countable words. Century Schoolbook 14 is the style and type size used in this motion.

*/s/ Melissa Fussell*
Melissa Fussell, Esq.
Assistant Federal Defender

### CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, I electronically filed this motion with the Clerk of Court using the CM/ECF system, which will give notice of filing to all counsel of record. A copy was also served by U.S. Mail, to the Defendant-Appellant, John Maron Nassif.

*/s/ Melissa Fussell*
Melissa Fussell, Esq.
Assistant Federal Defender